HERRING VS M'ELDERRY, et al.

*As to bills in equity to divest the title of lands.*

1. Where a bill was filed in Chancery, for the purpose of divesting the defendants of their title to certain lands, and the bill disclosed that the defendants title consisted of a claim of title, under the deed of a Creek Indian, to lands, selected under the treaty of the 24th of March 1832— which deed was made within five years after the treaty,— it was held—

First—That there being no allegation in the bill, that the contract of the Indian had been approved by the President—no valid title was shown in the defendants authorising the Court of equity to entertain the bill.

Secondly—That neither could equity entertain the bill in order to render a decree for money, alleged to be due by defendants to the plaintiff,—he having his remedy at law.

This case was brought up by writ of error, to the Circuit Court of Talladega county, on a decree of the Chancery side of that Court, dismissing a bill, filed by the plaintiff in error.

The bill alleged, that under the treaty formed between the United States and the Creek Indians, an allotment of three hundred and twenty acres of land, had been made to one Holeyar, a Creek, upon which land, orator, had, with the consent of said Indian, for some time, resided. That during this period, orator entered into an agreement with the Indian, to purchase his reservation, but finding his

5 P.        21

means inadequate, found it necessary to make a friend to assist him in the object. That with this view, he applied to one Walker, who agreed to supply the necessary funds, on the stipulation, that orator was to have one third of the land, including the dwelling and improvements, and pay to Walker so much money as should be an equal proportion of the whole sum given for the lands.

To effect this arrangement, orator employed one Hawkins as interpreter, and in making said contract, was put to large expenses ; afterward, one Brasher went to orator, and informed him that he desired to take the place of Walker, who was unable from the situation of his private affairs, to raise the funds, and to which proposition, after the consent of Walker had been obtained, the said complainant assented. Complainant then made a new contract with Brasher, whereby it was agreed that complainant was to have his election, either to comply with the contract, first made with Walker, or to take the entire lands, by paying the whole purchase money, and fifty per cent. thereon, by the twenty-fifth December, eighteen hundred and thirty-four. Subsequently to this event, complainant being unable to attend and have the contract certified, as required by the treaty, sent his son, with Brasher and Hawkins to Mardisville, for that purpose; having every confidence in the honor of said Brasher and Hawkins, and that the contract would be certified according to the agreement made with complainant. But to complainant's astonishment, the contract was certified in the name of Thomas

M'Elderry and said Hawkins; and the name of complainant, entirely left out of the contract.

The bill then charged a co-partnership to have been existing between M'Elderry and Brasher— alledged that he, and no other person made the contract with the Indian; that he had made improvements; and finally that he had made a tender to said Brasher and M'Elderry, of the amount agreed to be paid to Brasher, and of a deed to be signed,—all which had been rejected. And prayed relief &c.

The Chancellor dismissed the bill at the costs of the complainant.

Argued by *Peter Parsons* for the plaintiff in error—*Mardis* and *Chilton*, contra.

HOPKINS, C. J.—The bill in this case, was filed for the purpose of obtaining a decree to divest the defendants of title to a tract of land, and to vest it in the plaintiff upon a contract, which is set out in the bill. The plaintiff alledged in his bill, that the land was selected by Holeyar, a Creek Indian, under the treaty made between the United States, and the tribe of Creek Indians, on the twenty-fourth of March, eighteen hundred and thirty-two: That before the selection was made, the plaintiff was in possession of the land, and afterward continued to reside on it, with the consent of the Indian: That in eighteen hundred and thirty-four, the Indian made his deed for the land, to two of the defendants, which deed was certified by the proper agent.

There is no allegation in the bill, that the deed had been approved by the President of the United States. It does not, therefore, appear that either of the defendants has any interest in the land.

The second article of the treaty, requires such a selection of land, to be reserved from sale, for the use of the Indian entitled to it, for the term of five years, unless sooner disposed of by the Indian; and the third article, which authorises an Indian to convey his land, provides that his contract for the purpose, although certified by the proper agent, shall not be valid till the President approves the same. Whether the purchasers have an interest in the land, depends upon an act of the President, which the plaintiff does not allege, has been done. Should the President disapprove of the contract, the Indian would have the same right to the land, as if no such deed had been made by him, and no such certificate given by the agent. No contract with an Indian, for such land, entered into within five years after the treaty was made, is valid, unless approved by the President; and the contract with the Indian, which is set out in the bill, is alleged to have been made within less than three years after the treaty was made.

If the contract, which is alleged in the bill, between the plaintiff and the defendant, Brasher, were such an one as a Court of Equity would execute against persons, who had an interest in the land, it could not be executed against the defendants, neither of whom has, according to any allegation in

the bill, a valid agreement with the Indian, for the land.

If the plaintiff has expended money for the defendants, or either of them, upon their request, or under any circumstances, which make them responsible for it to him, he has a right to an action at law, to recover the money. But this Court can neither decree him the money, nor decide that he is entitled to recover it.

We are of opinion there is no equity in the bill, and that the decree of the Circuit Court, which dismissed it, is correct.

The decree is affirmed.