## HADEN v. WARE.

1. A purchaser from an Indian reservee, acquires no title by his purchase, until the contract is approved by the president, when this is done the purchaser is entitled to a patent, and when it issues it vests the fee in the patentee.

2. When a patent issues to one reserving the title of all others, whether legal, or equitable, derived from W. & Co, a court of equity will subject the legal title to a superior equitable title derived from W. & Co.

3. Where one with full knowledge of all the facts constituting his title to land, purchases it of another, or compromises a controversy in reference to it, and acts on the presumption that he has no title, the mistake, if one is made, is of law, and not of fact.

4. To authorize a court of equity to interfere, and grant relief for a mistake of law, the mistake must be so gross, and palpable, as to superinduce the belief, that some undue advantage was taken of the party, from imbecility of mind, or the exercise of improper influence.

Error to the Chancery Court of Montgomery. Before the Hon. A. Crenshaw, Chancellor.

THE bill which was filed by the plaintiff in error, alledges, that Cowe Hadjo, an Indian of the Creek tribe, was entitled as a reservee to the west half of section thirty-four, township seventeen, range twenty-one, east, in the Tallapoosa land district, and that he sold said land to James C. Watson & Co.; that on the 30th of July, 1839, James C. Watson & Co., for a valuable consideration, assigned, and relinquished the land, to one Robert G. Haden, by way of compromise, and settlement, of conflicting land claims, between said Haden, and said James C. Watson & Co., and that the articles of settlement were filed in the land office at Washington City, that patents might issue to the parties in conformity therewith; that complainant purchased said land of said Robert G. Haden, has paid for the same, and received a bond for titles thereto, and by virtue thereof took possession, and has made valuable improvements thereon, and has ever since occupied the land; that in the year 1845 he was informed, that a patent had issued for said land from the government to Robert J. Ware, and upon receiving such information, he called on said Ware, to know what claim, or title he had to said land; that Ware then exhibited to him a patent for said land, which appeared to be, and which the complainant believed to be, valid on its face, and to have been issued on the proper authority, and Ware then averred, that he was the lawful owner of said land, and denied that complainant had any title, by virtue of his purchase of Robert G. Haden, and threatened to turn complainant out of the possession of the same.

The bill alledges further, that the complainant was deceived by the representations of said Ware, that he was the owner of the land, and by the patent aforesaid, and led to believe that Ware was the owner of said land, and consequently was induced reluctantly to purchase said land again of Ware, for two thousand dollars, for which he executed his three notes for the sum of $666 68 each, due January, 1846, January, 1847, and January, 1848, and thereupon Ware executed to complainant, a bond, conditioned to make him such title as he had, and to assign to complainant the patent aforesaid; that after this, he applied to an attorney to ascertain how he should recover back the money he had paid to said Robert G. Haden; that his attorney applied to the land office, and

discovered that the patent had issued improperly to Ware, and that in fact complainant was the rightful owner of the land, under the purchase from Robert G. Haden; that Ware acquired no title by the issuance of the patent to him; that the patent to him is illegal, and void, and that it should have been issued to Robert G. Haden; that the patent to Ware was issued on the assignment of Alfred Iverson, a pretended attorney in fact of James C. Watson & Co., which was made on the 4th day of May, 1842; but the assignment of Watson & Co., to R. G. Haden, was made on the 30th of July, 1839. The bill charges, that complainant had no means of knowing any thing about the articles of agreement, between Watson & Co., and R. G. Haden, and did not suspect any fraud in the issuance of the patent, until after his purchase from Ware, and until after his attorney had procured the evidence of title from the land office at Washington.

The bill therefore, charges, that the notes were given without consideration, and in consequence of the fraud of Ware, practiced on complainant, and the wrongful issuance of the patent; that the assignment made by Iverson, to Ware, was without consideration; that R. G. Haden had left the State, and is insolvent; that the firm of Watson & Co. is insolvent, and that complainant had demanded said notes of Ware, and offered to deliver up his bond for title; and that Ware knew, that the patent had issued to him wrongfully, and that he had no title. The bill prays that the contract between complainant and Ware be rescinded, and the notes delivered up to complainant. The bill was afterwards amended, by alledging, that at the time of the transfer of Iverson, to Ware, complainant was in possession of the land; that the assignment to Ware, was for the nominal sum of $250, and that at the time it was made by Iverson, he was the attorney of R. G. Haden, and by him employed to procure title to said land; and that the patent was procured by the fraud of Iverson, and Ware, or by Iverson and others.

A supplemental bill was afterwards filed, which referring to, and reiterating the original bill, alledges, that Ware had commenced suit on said notes, by attachment, which had been levied on the property of complainant, and prays an injunction, in addition to the relief sought by the original bill.

Robert J. Ware, the defendant, answered the bill, and amended bill. His answer alledges, that Spier M. Hagerty & Co., of which respondent was a member, purchased the land of the reservee, Cowe Hadjo, previous to 1839, and fully paid for the same ; that they filed their claim before the commissioner appointed to examine into the claims, by way of memorial, claiming said land against James C. Watson & Co., which memorial is attached to the answer; that on the filing of said memorial, an agreement was entered into on the 20th day of April, 1839, between Spier M. Hagerty & Co., and James C. Watson & Co., and by the terms of said agreement, which it is alledged is also on file in the land office at Washington City, the two firms of Spier M. Hagerty & Co., and of James C. Watson & Co., became jointly interested in said tract of land. The agreement is attached as an exhibit to the answer, and shows that Spier M. Hagerty & Co., claimed by purchase from the Indian reservees, various tracts of land, which were also claimed by Watson & Co., by virtue of a contract entered into between the company, and the chiefs of the Creek tribe, under the directions of Gen. Jesup; that for the purpose of settling said controversy, it was agreed, that said Spier M. Hagerty, and said Watson & Co., should be equally interested in the lands claimed by Spier M. Hagerty & Co., and as to which they had filed memorials before the special commissioner at Washington; and upon the confirmation of the claim of Watson & Co., the lands claimed by Spier M. Hagerty & Co., were to be equally divided between the companies, by allotting one half section to one, and another, to the other company, and the said companies were mutually to relinquish to each other, the portion *allotted to each;* that upon such agreement, the said tract of land described in the bill was allotted to Spier M. Hagerty & Co., and was so certified to the commissioner of Indian affairs; that on the 4th of May, 1842, Alfred Iverson, the agent of the company of Watson & Co., assigned said land to respondent, and requested a patent to be issued to him, and thereupon, the president issued a patent to the respondent, on the 16th day of May, 1845, a copy of which is attached to the answer. The answer also avers, that so far as respondent knew, or

believed, Robert G. Haden had no title to said land, and any claim he may have set up, he believes to be fraudulent. Respondent denies all knowledge of the transfer by Watson & Co., to R. G. Haden, and knows nothing of the contract between R. G. Haden, and complainant; but admits that complainant entered into possession of said land, and made improvements on it. Avers, that respondent has uniformly claimed the land, ever since the purchase by the company of Spier M. Hagerty & Co., from the Indian—Denies that he made any false, or fraudulent representations to complainant respecting his title, or that he has in any manner deceived, or defrauded him; but states, that complainant, in the summer of 1845, inquired of him, if he had a patent for said land, and that he informed him he had, and exhibited it to him for his inspection, and examination; that complainant read it, and then inquired, upon what terms he could purchase the land, and respondent then informed him. Thereupon complainant accepted the terms, and wished to execute the necessary writing, but respondent said to him, that he appeared to be excited; that he did not wish to execute the writings at that time, but advised complainant to go home, and reflect upon it, for ten or twelve days, and if he still wished to make the purchase, he could then do so, and the writings could be executed; that complainant went away, and returned at the expiration of the time, and then gave the notes described, and respondent executed the bond set out in the bill. The answer admits, that respondent said, that Robert G. Haden had no title, and he still thinks he had none, although he claimed to have purchased from the Indian reservee. But his purchase had been declared fraudulent, by commissioners, appointed to examine into the frauds, in the purchase of Indian lands. Respondent believes that complainant made the contract of purchase, with a full knowledge of all the circumstances, and that he knew he was purchasing the title of respondent, and nothing more, and that he did not give for the title more than it was worth. The patent is also set out as an exhibit to the answer, and contains a reservation of the legal, or equitable claim, if any, of any, and all persons claiming under, or through J. C. Watson & Co.

Vol. 15—20

The chancellor, at the hearing, considered the title of Ware to the land, better than that of R. G. Haden, and upon that and other grounds, dismissed the bill, which is now assigned as error.

McLester, for plaintiff in error.

1. The possession of the land by the plaintiff in error from 1839, and his permanent valuable improvements continuously made to the issuance of the patent to the defendant, on the 16th May, 1845, are notice of his title and adverse claim to the whole world, equivalent to the registration of a legal title. His equity need not be recorded, and must prevail against creditors and purchasers. Morgan et al. v. Morgan et al. 3 Stew. 383; Finch v. Earl of Winchelsea, 1 P. Wms. R. 278; Littell's Sel. Cases, 358; Harris et al. v. Carter's adm'rs et al. 3 Stew. 233; Burt v. Cassety et al. 12 Ala. Rep. 734; Scroggins v. McDougald, 8 Ala. Rep. 382.

2. The transfer of the said land made by Alfred Iverson, attorney in fact of James C. Watson & Co., to the defendant, on the 4th of May, 1842, was absolutely void, for the plaintiff had long been, and was then in the adverse possession of the land, claiming under title bond of R. G. Haden, to whom the land had been transferred by Watson & Co. on the 30th of July, 1839; and the patent is void for the same reason. See Dexter & Allen v. Nelson, 6 Ala. Rep. 68; Scroggins v. McDougald, 8 Ala. Rep. 383.

3. If the assignment upon which the patent issued is void, the patent also is void, for the stream cannot rise above its source. Ladiga v. Roland, 2 Howard, 581. The United States had no right to issue the patent to Ware. Reynolds v. McArthur, 2 Peters's R. 417; Jackson ex dem. Dickerson v. Stanly, 10 Johns. R. 133.

4. If the patent to defendant is valid, and the United States cannot issue another, then the defendant is a trustee for the plaintiff, for an equitable shall prevail against one having a naked legal title, and he should be forced to convey at his own costs, having wrongfully obtained the title. Morgan et al. v. Morgan et al. 3 Stew. R. 383; Meredith v. Naish, Ib. 207; Burt v. Cassety, 12 Ala. Rep. 734.

5. The complainant purchased the land of the defendant

on the 13th August, 1845, soon after the issuance of the patent, for $2,000, remaining in the possession of the land which he had held from September, 1839—"Having a right to the land, and being ignorant of his own title, equity will compel the vendor to refund the purchase money, with interest, from the time of bringing the bill, although no fraud appear." 2 Sug. on Vendors, marg. page, 44; 1 Vesey, sr. 126; Mosely, 364; 2 Scho. & Lef. 101; 2 Ball & Beat. 171; 1 Story's Eq. 134, § 122; 1 Ves. sr. 400; 2 Ib. 304.

6. It cannot be pretended that this is a compromise of a doubtful, or even bad claim. It is a purchase by the complainant of his own property, at a full price; but if it is a compromise; it was induced by false representation, and was therefore voidable. 10 Ala. R. 305.

J. E. BELSER, contra.

1. The title to the land has been adjudicated by the government, and the patent has issued to defendant, reserving on its face the equities of the parties claiming through Jas. C. Watson & Co. This patent cannot be vacated, as attempted by complainant. Jackson v. Hart, 12 Johns. 77; 1 Mun. 135.

2. The law requires reasonable diligence in a purchaser, to ascertain defect of title, but when such defect is brought to his knowledge, no inconvenience will excuse from the utmost scrutiny. 15 Peters, 94; 4 Ohio, 458; 2 Binn, 455.

3. The notes given by complainant to defendant for the land, were fairly and intelligently given in the settlement of a claim backed by a patent. The defendant, in his answer, denies ever making any fraudulent representations on his part in the case, and there is no proof adduced by complainant tending to establish this part of his bill. Again, defendant's bond, executed to complainant, shows that the latter well knew what he was purchasing, and the testimony of the witness Blakey proves that the land was purchased by complainant after deliberation and inquiry. The contract will be upheld, without reference to complainant's previous title or previous possession. 8 Metc. 403; 3 Hill, 504; 1 Stew. 532; 9 Cranch, 98; 5 Wheaton, 304; 4 Ohio, 459; 2 Binn, 455.

4. The evidence of R. G. Haden is inadmissible on the ground of his interest: it is objected to for this cause in the record. That of Abbott and Ryan, objected to by complainant, is immaterial; the record from the government office is proved, independent of their testimony. Their proof as to their agency, &c. is however good, and this, coupled with the record, is sufficient. The complainant did not purchase of R. G. Haden until 25th September, 1839.

DARGAN, J.—The proof altogether fails to establish, that the defendant in error practised any fraud or imposition on the plaintiff, in the execution of the contract. But it is contended, that the complainant is entitled to relief on the ground of mistake; that at the time of entering into the contract, he had the title to the land, and he made the purchase in ignorance of his rights, and by the contract he acquired no title, nor did Ware, the defendant, part with any. On this ground it is contended, that equity ought to relieve him. It therefore becomes necessary to examine if there was a mistake, and if there was, is it of such a character as entitles the complainant to relief.

The material facts on which the title, or claim of the parties to the land in dispute depend, are as follows: The complainant claims the land by a contract made with Robert G. Haden, who claimed to have purchased of the Indian, for whom it was reserved under the treaty of 24th March, 1832. But this contract of R. G. Haden has not been approved by the president. Spier Hagerty & Co. of which firm the defendant was a member, also claimed to have purchased the same land from the Indian, but this contract also had never received the approval of the president. J. C. Watson & Co. also claimed the land, by a contract entered into with the chief of the tribe, and their contract was ratified and approved by the president. Before this however was done, R. G. Haden and Watson & Co. having conflicting claims to different tracts of land, bought from the Indians, entered into an agreement by which these claims were to be settled, and by this agreement, the land in dispute was to be assigned to R. G. Haden. This agreement bears date the 3d day of July, 1839. Spier Hagerty & Co. also claimed various tracts of

Haden v. Ware.

land which were claimed by Watson & Co., and they had filed memorials before the commissioner appointed to examine into the conflicting titles derived from the Indians, against the claims of J. C. Watson & Co. On the 20th May, 1839, the two firms of Watson & Co. and Spier Hagerty & Co. entered into an agreement, by which opposition to the claims of Watson & Co. was withdrawn, and the lands claimed by both the firms were to be equally divided between them, by half sections; and the answer alledges, that under this agreement, the land in dispute was allotted to Spier Hagerty & Co., and was so certified to the commissioner of Indian affairs. On the 4th day of May, 1842, the agent of the company of J. C. Watson & Co. assigned the land to the respondent, and requested the patent to be issued to him, which was done in 1845. But the patent, on its face, reserves all title, whether legal or equitable, in favor of any other person, derived from Watson & Co. From the evidence it appears, that Iverson, as the agent of Watson & Co. assigned the land to Ware, and requested the patent to issue to him. It also appears, that Robert G. Haden, and the complainant, had employed Iverson to represent the claim of complainant, and to procure for him a patent. After the patent had issued to Ware, the complainant called on him, to inquire if it had been issued to him, and being informed that the patent had been issued to the defendant, he inquired whether the defendant would sell the land; Ware answered in the affirmative; stated to him the terms on which he would sell, and then showed him the patent; which was examined by the complainant; but the defendant declined then to consummate the contract, because the complainant seemed to be excited; but requested him to take time to reflect on it, and if he still desired to make the trade, after ten or twelve days deliberation, that he would consummate it. The answer also admits, that in this conversation, he expressed the opinion, that R. G. Haden had no title, and still insists that he had not. At the expiration of ten or twelve days, the complainant returned, and still desiring to make the trade, it was consummated. These are the material facts on which the title of the parties to the land in dispute depends, and the circumstances under which the contract sought to be rescinded was entered into.

We think it very clear, that the legal title to the land passed to Ware, by the patent. By the treaty, the ultimate fee in the land reserved for the Indians, remained in the government; and the purchaser from an Indian reservee acquired no title by his purchase, until the contract was approved by the president; when this was done, the purchaser became entitled to a patent, which, when issued, carried the fee to the patentee. 5 Porter, 161; Ib. 413.

As neither the contract af Haden, or of Spier Hagerty & Co. was approved by the President, neither of them gave, within themselves, any right or title to the land. The contract of J. C. Watson & Co. was approved of, and they became entitled to a patent, and could have it issued to themselves, or could direct that it be issued to another; and a patent issued on this contract, which had received the sanction of the president, carried with it the legal title.

It is true, that a patent for land issued without authority of law, is void; or if the government has no right or title of any description, to the thing granted, the patent is a nullity, and confers no right or title whatever on the patentee.

But this is not the condition of the patent in the present case. The president had authority, and it became his duty, to issue patents to such persons as purchased the Indian reservations, after the contract had been approved by him; and a patent thus issued, carries with it the highest evidence of legal title.

In reference to the land in dispute, the title was in the government, and the president was authorized to issue a patent to Watson & Co. A patent was issued under their authority to Ware, and it vested in him the legal title. There was then no mistake in regard to the legal title. The patent, however, reserves the title of all others, whether *legal* or *equitable*, derived from Watson & Co., and if the complainant had the superior equitable title, a court of equity would subject the legal title to it; and probably would do so, even if there had been no express reservation of title on the face of the patent. If then there was a mistake at all, it was in reference to the equitable, not the legal title to the land. But if we should arrive at the conclusion, that there was a

mistake, and that before the contract was entered into, the complainant had the superior equitable title, we should be met with the question, whether a court of equity, under the circumstances of this case, could afford relief on the ground of mistake alone?

I admit, that if one wholly ignorant of his title, and asserting no claim to land, purchases it of another, and afterwards discovers that he had the title before his purchase, and that his vendor had none, a court of equity would afford relief, and decree the vendor to refund the purchase money. 1 Sugden on Vend. 253-4. But the foundation of relief in such a case is, that the party acted in ignorance of the facts. When all the facts constituting the title of the complainant are known to him, and he purchases the land, or compromises a controversy in reference to it, and acts on the presumption that he has no title, then the mistake is one of law, and not of fact.

If there was a mistake made by the complainant, it was a mistake of law, for we are satisfied that each party knew the facts on which his own title, or claim, depended. The patent which reserves the title of all persons, whether legal or equitable, was examined by the complainant; he then took time to deliberate on the propriety of the contract, and deliberately entered into it, against a mistake of law; under such circumstances equity cannot afford relief.

There are cases to be found, which hold that equity can grant relief against a plain and palpable mistake of law.— Bingham v. Bingham, 1 Vesey, 126; Lansdown v. Lansdown, Mosely, 364; 2 Sch. & Lef. 101; 2 Ball. & Beat. 171. But I think, on a strict examination of the cases, it will be found, that the mistake was so gross, and palpable, as to superinduce the belief, that some undue advantage was taken of the party, owing either to his imbecility of mind, or the exercise of improper influence. When the evidence is sufficient to induce that belief, then a court of equity ought to interfere. 1 Story Eq. 138, 140. And whether there may not be cases of such gross mistake as to afford evidence within themselves of undue advantage, against which equity will relieve, it is not necessary to decide; for if there was a mistake as to the legal rights of the parties in this case, it

was made with a full knowledge of all the facts, after due deliberation, without any persuasion on the part of the defendant, or any effort on his part to induce the complainant to enter into it. Both parties asserted title to the land, and by the contract, the legal, if not the equitable title passed to the complainant. Under such circumstances, a mistake of law alone cannot give a title to relief. See 18 Wend. 407; 6 Paige, 189; 1 John. Ch. R. 512. Let the decree be affirmed.

CHILTON, J., not sitting.