## DILL ET AL. *vs.* SHAHAN.

1. Although a court of equity may, in certain cases, relieve against a mistake of law, yet the mistake must be gross and palpable, and such as would warrant the belief that an undue advantage was taken of the complainant, owing either to his imbecility of mind, or to the exercise of some improper influence over him either by the party with whom he dealt, or by some other person with the knowledge, consent, or procurement of that party.
2. If an executor purchase lands belonging to his testator's estate, at a public sale made by himself and his co-executors, under a mistake of law as to the power of sale conferred on them by the will, he cannot be relieved of his purchase in equity.
3. A cross bill cannot be sustained when the original bill is without equity, nor when it is inconsistent with the answer.

APPEAL from the Chancery Court of St. Clair.
Heard before the Hon. E. D. TOWNES.

THE original bill in this case was filed by Joel Chandler to obtain a rescission of a contract for the purchase of certain lands belonging to his father's estate, which he had bought at a public sale made by himself and his co-executors, under the belief that the will of his father conferred authority on them to sell the real estate. The bill alleges, that complainant and his co-executors had propounded his father's will for probate, and that it had been established as valid by the verdict of a jury; that he and his co-executors then qualified, gave bond, and took upon themselves the execution of the will; that "under the supposition that said will authorized a valid sale to be made of the real estate," they exposed the lands to public sale; that complainant, "not doubting the full authority of said executors to sell under said will, and the power of any one of them to convey title, purchased said lands at said sale, and they were knocked off to him at the price of $4000; and thereupon the said James Hampton (one of the executors) executed to him a deed for the same as executor of said estate"; that complainant gave his three promissory notes for the purchase money, with John Shahan (who is made a defendant to the bill) as surety, and also executed a deed of trust on the land to secure their payment; that a judgment

has been obtained against Shahan on one of said notes, on which he has been compelled to pay $1830 ; that said executors have been removed, and the sheriff of the county appointed administrator *de bonis non* of said estate ; that a decree has been rendered against said executors for the amount of said notes ; that complainant, as soon as he discovered the utter want of authority in the executors, under said will, to make said sale, tendered a rescission of said contract to said administrator, and offered to deliver up to him and to cancel said deed from James Hampton, and even to reconvey by deed whatever interest might have vested in him under said sale, all which propositions were refused. The heirs-at-law and administrator of the decedent, the executors who made the sale, and said Shahan, are made defendants to the bill ; and the prayer is, for a rescission of the contract, the cancellation of said notes and deed of trust, and for general relief.

The original bill was filed in March, 1846 ; and at the ensuing August term, the following interlocutory decree was rendered : "In this case the complainant asks leave to dismiss his bill ; and it appearing to the satisfaction of the court that the bill was filed for the benefit of John Shahan, the surety of the complainant, and that the application is made in fraud of his rights, and by collusion with another person; and the said Shahan here offering to indemnify said complainant against all costs which may accrue in the case,—it is ordered that said leave be refused, and that said Shahan forthwith file with the register of this court a good and sufficient bond, payable to said Chandler, in a sum sufficient to cover all costs," &c.

On the 5th March, 1847, Shahan filed his answer to the original bill, and also a cross bill. His answer avers, "that defendant, who was made such for matter of form, and whose interest said bill prays may be regarded, so far as that he may be refunded the amount of money he has been compelled to pay by execution, as stated in said bill, and that the collection of the same be perpetually enjoined,—comes and accepts the provisions of said bill tendered in his behalf, and, answering the same, says that the charges, statements, and allegations therein contained, are true, and this defendant avers his readiness to pay the expense of said suit ; and now, having fully

answered, he prays that he may be permitted to file a cross bill, so as to·obtain the relief prayed in his behalf, and such other and further relief as in said cross bill is prayed." The cross bill avers, that, since the filing of the original bill, the land has been sold by the sheriff as the property of the original complainant, and purchased at the sale by one John F. Dill, who had notice of the pendency of this suit and of all the facts relating thereto, and who discouraged the bystanders from bidding at the sale by representing the title to be worthless; that Dill afterwards obtained from the original complainant an assignment of his interest in his father's estate, without any consideration, and for the purpose of defrauding Shahan; that said complainant is utterly insolvent, and is attempting, by collusion with said Dill, and in fraud of Shahan's rights, to dismiss his original bill in this case, and to make no further effort to set aside said purchase, thus throwing the whole burthen of it on said Shahan. The prayer of the cross bill is, that the purchase by said Dill from Chandler be vacated and set aside, and the latter's interest in his father's estate be applied to Shahan's reimbursement for the amount already paid out by him as Chandler's surety; that Shahan, unless the relief prayed by the original bill should be granted, be subrogated to the rights of the executors under the trust deed, as to the sum already paid by him as such surety, and that the said trust deed be closed for the purpose of reimbursing him, as well as protecting him against the other notes.

The chancellor held, that the complainant in the original bill was not entitled to any relief, as the doctrine " *caveat emptor*" applied to his purchase; but he retained Shahan's cross bill, and ordered a sale of the lands under the trust deed to pay the second and third notes yet unpaid, and directed the surplus, if any, to be paid to said Shahan to refund the amount which he had been compelled to pay on the first note. From this decree the defendants appeal, and here assign for error, 1st, that the court erred in decreeing a sale of the land embraced in the deed of trust; 2d, in not dismissing the original bill; 3d, in not dismissing the cross bill.

S. F. RICE, for the appellants:

1. The complainant in the original bill cannot rescind the

contract of purchase of the land, because he had full knowledge of all the facts and of the condition of the title,—because he accepted the deed of conveyance and went into possession,—because the heirs do not even question his title, but are willing to acquiesce in it,—because the maxim "*caveat emptor*" applies to him in its utmost rigor.—4 Ala. 29, 622; Haden v. Ware, 15 *ib.* 149; Reese v. Lamkin, 7 *ib.* 170; Reavis' Dig. 302, §§ 964 to 1000; Worthington v. McRoberts, 9 Ala. 300; Winter v. Perkins, 7 *ib.*; Jennings v. Jenkins, 9 *ib.*; Steele v. Kinkle, 3 *ib.* 352; Beck v. Simmons, 7 *ib.* 71.

2. The complainant in the cross bill cannot have any relief as to the rescission of the contract, because there can be no rescission; nor can he have relief by subrogation, because he has not paid the debt, but only one third of it. The right of subrogation cannot accrue to a surety, from his mere liability to pay, but from actual payment of the entire debt. Until the whole debt is paid, the surety can do no more than file a bill to compel the creditor to sue (which is not the relief sought in this case).—Whitaker v. De Graffenreid, 6 Ala. 303; Abercrombie v. Knox, 3 *ib.*; 4 Equity Dig. (Bar. & Har.) 654, § 7; Bogert v. Perry, 17 Johns. 352. The cross bill must be confined to matters in issue in the original bill, and must be consistent with the answer.—1 Hopk. Ch. 48; 8 Cowen 361; Story's Eq. Pl., § 401.

3. The assumption of the solicitors of complainant, that the other two thirds of the debt for the land, have been extinguished, is overturned by the bill and cross bill. There is no such pretence, or averment in either bill, and the complainants cannot raise a question in argument, which is not put in issue by the bill. The bills treat the entire debt ($4000 06¼) for the land as a valid debt, and assert a payment or extinguishment of one third of it only. A complainant is estopped from disputing anything admitted by his bill. The three notes are not the debt, but are only evidence of the debt. If the notes were burned up, the debt would not thereby be extinguished.—Foreman v. Hardwick, 10 Ala. 316. And although " a security, (to-wit, a note) given by one executor, in which he with his co-executors is a promisee, cannot be enforced even against his surety, when he is one of the plaintiffs," (as decided in Chandler's Ex'r v. Shahan, 7 Ala. 251)—

45

yet it by no means follows that the debt itself is extinguished or paid; but on the contrary, that decision rests upon the solid ground, that although the debt remains unextinguished, the debtor executor is not chargeable to his co-executors, but " to those entitled under the will, or in course of distribution," and that a court of law ought not to enforce the collection of the note in such case, because even " a payment by him to his co-executors would not discharge him from liability to account" to the legatees or distributees.—7 Ala. 254-55. It is entirely clear, that the principle thus decided in 7 Ala. 251, has no sort of application, except in cases where an attempt is made by co-executors to extort from the debtor executor a payment, which payment, even if made to them, would leave the debtor executor and his surety liable for the same debt to legatees or distributees. The principle is a mere shield against two payments of the same debt. Here the complainant does not use it as a shield, but as a sword. He does not ask less than to be allowed to use it so as to cut up and destroy the right of the legatees and heirs to the deed of trust made to protect the estate, to which two thirds of the debt is still due. The deed of trust was executed to secure the whole debt of $4000 06¼. The debt belongs to the estate of Joel Chandler, deceased, and so does the deed of trust. The heirs and legatees have the right to call on Barker, the trustee, to sell, to enforce the collection of the remaining two thirds of the debt. This is the right of the real creditors.

4. Upon the case, as made by the cross bill, there can be no subrogation. Shahan is a mere simple contract creditor of his principal, and is attempting to collect this simple contract debt in chancery. This is intolerable.—Sanders v. Watson, 14 Ala. 198.

5. The existence of the deed of trust cannot aid him, nor confer jurisdiction on a court of chancery.—Roland v. Logan, 11 Ala.; Chambers v. Maulden, 4 ib. 477; Colburn v. Broughton, 9 ib.

In every case cited by complainant's solicitors, payment of the entire debt is recognized as essential to create the right of subrogation. Lyon v. Bolling, 10 Ala. 463, is as strong as any case in the books; yet in that case, it is stated as clear law, that the surety, " upon the payment of the money due,"

may stand in the place of the mortgagee and "compel him to assign the same" (mortgage).—10 Ala. 467. The right of subrogation never exists in favor of a surety until the whole debt is paid. Before the debt is wholly paid, the law protects the surety by another principle, to-wit, "If the creditor parts with any fund which he could apply to the debt, the surety becomes exonerated *pro tanto.*"—1 Ala. 29. It is absurd to pretend that a surety for a debt secured by mortgage, acquires the rights of the mortgagee, by merely paying one third of the debt.

· The argument of complainant's solicitors starts with the error that there were "three debts provided for in the deed of trust." It mistakes the three notes for the one debt of $4000 06¼ for the land. The notes are not the debt, but only evidence of it.—10 Ala. 316.

The argument also disregards the doctrine of subrogation, by allowing to a surety all the rights of the mortgagee, before the debt is paid.—4 Equity Dig. 651, § 11.

JOHN T. MORGAN, *contra :*

1. A cross bill need not be confined to the issues presented in the original bill : if the rights are equitable, and grow out of the transactions on which the original bill is founded, it is sufficient ; and it may be entertained to establish or perfect a claim which the original bill sought to set aside.—Nelson & Hatch v. Dunn, 15 Ala. 501; Wickliffe v. Clay, 1 Dana 589. The equity of the cross bill, in this case, is not at all dependent on the equity of the original bill, since, although it relates to the same subject-matter, it asserts independent grounds of equitable relief in favor of Shahan.

2. The debt created by the purchase of lands, by Joel Chandler, at his own sale as executor, if valid at all, became assets in his hands as an executor, as soon as the money was due, whether it was in fact paid or not.—King v. Shackleford, 6 Ala. 423 ; 13 *ib.* 435. No action, either at law or in equity, would lie in favor of any person, to collect the debt from Chandler; because it was assets of the estate, and as such, due to himself only, or to the estate ; he could be made to account for it as executor, and in no other character. And it is for this reason, that the co-executors of Chandler cannot

treat this debt as a debt due to them from Chandler, but a debt due to the estate, which he has received ; and as to them, is assets in his hands. If it is a debt due to them as executors, why can't they recover it? The debt is paid the moment it is due.

3.. But it may be said, that Shahan, the surety on the notes, can't take this view of it ; that his debt is not paid, however Chandler's may be. I answer, that Shahan is a surety, and whatever discharges the principal, discharges the surety. It is not a payment alone which can discharge a surety. Whenever the right of action upon the instrument, by which the surety is bound, is gone, then the surety is discharged. There is no law to throw a surety off of the express terms of his contract, and to create an implied obligation against him to pay, outside of the express terms of the contract.—McKay v. Dodge, 5 Ala. 388.

4. The notes given for the purchase money of the land became *functus officio* by the payment which Joel Chandler, as executor, made of them. It cannot be proceeded upon, and therefore has no office to perform.—Foster v. The Athenæum, 3 Ala. 302.

5. Really the sale by the executors was void, for want of power in them to make a sale. It is as if no sale had ever been made. The money arising from such a sale cannot be assets.—Price v. Simmons. Joel Chandler and Shahan were both heirs-at-law of Joel Chandler. If the sale was void, it did not divest their title as heirs, and did not entitle them, as heirs, to share in the proceeds of the sale. No legal consequences flowed from the sale. It is not like the case of Perkins v. Winter, and other cases cited by the appellant, but more like the case of Hurst & Shipp v. Weathers, 15 Ala. 417. The sale was a nullity, and therefore the maxim " *caveat emptor*," cannot apply. The objection is not that the title was bad, but that, whether good or bad, it was not sold ; there was no sale, but a mere pretence.

6. The sale cannot operate as an estoppel, because it is averred and admitted, that the sale was made in ignorance of the legal rights of the parties ; and for the other reason, that the executors did not sustain any injury by the act. They could not be made liable for the proceeds of the sale, as assets.

7. If the rescission of the contract was urged on the ground of fraud or failure of title, then the acquiescence of Joel Chandler, and his delay to file the bill for so long a time, would be conclusive on him; but it must be remembered, that while he took the possession of the land, under the executors, he had the superior right to it, as heir; and there is no possibility that the executors could be prejudiced by the delay, or that they could ever perfect the title to the land. The rule does not apply in such a case.

8. But Shahan's right to file this cross bill, in his character of surety for Joel Chandler, can be safely rested on other grounds—1st, any surety, whether he has paid the debt or not, can go into equity and compel his principal to pay the debt.—Comyn's Dig., vol. 8, p. 884; Tankersly v. Anderson, 4 Dess. 44; 10 Paige 595; 1 Sandf. Ch. R. 212; 1 Story's Eq. § 327; 2 ib. §§ 730, 840; Moore v. Beardsley, 8 Wend. 194; Eddy v. Tarver, 1 Penn. 581. And this being a clear ground of equitable jurisdiction, the court can go on and give full relief, and wipe out all frauds and fraudulent conveyances which intervene to prevent justice.—13 Vesey 133; 10 Johns. 587; 17 ib. 384. In Marsh v. Pike, 10 Paige 595, cited *supra*, the surety, who had not paid the debt, was permitted to file his bill to compel the creditor to foreclose the mortgage given for the security of the debt.

9. A surety stands upon higher grounds than a simple contract creditor, against the principal, especially where that relation still subsists; this is on the principle that a court of equity will interfere to prevent an injury, when it would not give redress for the wrong. If the surety has paid the debt, he becomes the simple contract creditor of his principal, and he can only claim relief then on the principle of substitution; and in this respect, his rights are very clear. If he has not paid the debt, he can compel the principal to pay it, in equity, and thus to save him harmless. This right is equally as clear as the other.

10. The cross bill presents both of these rights distinctly.

LIGON, J.—The original bill of Joel Chandler, set out in this record, is without equity. It seeks a rescission of his contract for the purchase of a tract of land belonging to the

estate of his father, of which Sarah Chandler, James Hampton, and the complainant, were the executors, so that the complainant was both vendor and vendee. It is not pretended, that the complainant was ignorant of any fact connected with the title to the premises, or connected with the power and authority of the vendors to sell and convey them : he relies solely upon his ignorance of the law arising upon the facts, (which were well known to him at the time he made the purchase,) for relief against his purchase.

It is true that courts of equity can relieve against mistakes of law, in certain cases ; but, we apprehend, that the mistake of law against which such relief will be granted, must be gross and palpable, and such as would warrant the belief that undue advantage was taken of the party, owing either to his imbecility of mind, or the exercise of some improper influence exerted over him by the party with whom he deals, or some other person with his knowledge, consent, or procurement : when the evidence establishes this, and the bill sufficiently charges it, a court of equity will interfere for his protection. -- 1 Story's Eq., §§ 138, 140; Bingham v. Bingham, 1 Vesey 126; Lansdown v. Lansdown, Moseley 364; 2 Sch. & Lef. 101; 2 Ball & Beat. 171; Haden v. Ware, 15 Ala. 149.

But this case is not one of that class. The parties here must have known all the facts in respect to the title ; and as the complainant was both vendor and vendee, he cannot be allowed to stultify himself, or to say that he perpetrated a fraud on himself from which a court of equity should relieve him. In fact, he does not pretend that any undue influence was exerted over him, or any fraud practiced upon him in the transaction. He seems to have acted on his own unbiased judgment, and to have made a bad bargain. This is his misfortune, but does not entitle him to relief in equity. He is, under his purchase, at least entitled to the interest of Sarah Chandler and James Hampton in the lands ; and, perhaps, may be entitled to that of the other heirs who were of full age at the time of the sale, and were present at it, and assented to what was done. It is certain, that Sarah Chandler and James Hampton can assert no claim to the premises inconsistent with their deed to the complainant, for they are estopped by that instrument. We are clearly of opinion that

there is no equity in the original bill, and that it should have been dismissed.

As the original bill is without equity, there seems to be nothing on which to found a cross bill. These latter bills are never allowed until an answer is filed to the original bill, and then it is required by the rules which allow them that the matters set up in them should be german to the matter of the original bill, and consistent with the answer of the defendant who files it.—3 Dan. Ch. Pr. & Pl. 1743-46; 3 Rand. 117. It would seem to be 'a solecism in terms, to speak of a cross bill when there is no original bill; and a paper, in the form of a bill in chancery, which contains no matter which would give that court jurisdiction, is not to be regarded as an original bill for any purpose, but in legal contemplation is a nullity ; and any action taken upon it in the court in which it is exhibited, except to dismiss it, would be without authority and void.

Again ; the paper treated as a cross bill in this case contains matter wholly repugnant to the answer of the defendant who files it. In his answer to the original bill, Shahan, the complainant in the cross bill, admits all the allegations, and concludes his answer " that the charges, statements, and allegations therein contained, are true, and this defendant avers his readiness to contribute to the expense of said suit." It will be borne in mind that the original bill seeks a rescission of a contract for the sale of land, and the cancellation of certain notes made by Joel Chandler and Shahan for the purchase money, as well as a deed of trust made by the former to secure the payment thereof; and all this, Shahan, in his answer, admits should be done. In his cross bill, he sets up the same trust deed as a valid security, and having paid a part of the purchase money, as surety for the complainant in the original bill, asks that the mortgage security be foreclosed for his benefit to the extent of the money so paid by him. Here is a palpable inconsistency, which is wholly disallowed by the rules governing cross bills. In Hudson v. Hudson, 3 Rand. 117, the reason for this rule is thus succinctly stated by Carr, J.: "Now it is settled law, laid down by Lord Hardwicke, and never, I believe, stirred since, that a party shall not question in his cross bill what he has admitted in his

answer ; and upon the strongest reason, for the answer being upon oath, it could never be endured that in the same court, in the same proceeding, the same party should set up a claim in direct conflict with that oath."

This view of the case relieves us from passing upon many points raised in the argument, and elaborately and ably discussed by the solicitors of the parties. Our opinion is, that the decree of the chancellor must be reversed, and a decree here rendered dismissing both the original and the cross bill, at the cost of the appellee, John Shahan.