| 51 | 151 |
| 97 | 482 |

# Hardigree *v.* Mitchum.

*Bill in Equity to enforce Vendor's Lien for Purchase-money of Land.*

1. *Removal of incumbrances by purchaser; compensation.* — A purchaser of real estate, holding his vendor's warranty against incumbrances, has the legal right to remove them, and is entitled to a deduction from the unpaid purchase-money of whatever sum he has reasonably expended for that purpose; but, when he seeks such deduction, or compensation for the removal of an incumbrance, he must show that it was an actual, subsisting incumbrance, capable of enforcement, or that his vendor is estopped from denying its validity.

2. *Mistake or ignorance of law.* — The common-law rule which refuses relief against ignorance or mistake of law, and which is equally applicable in courts of law and equity, is not rigidly enforced where such ignorance or mistake is induced by fraud, or imposition, or undue influence, or an abuse of confidence springing out of the peculiar relations existing between the parties.

3. *Retroactive effect of judicial decisions.* — A decision of this court, overruling former decisions, which had been acquiesced in and acted on by the community generally for several years, will not be allowed a retrospective operation, so as to overturn acts done and contracts executed in good faith and reliance on those decisions.

4. *Estoppel against vendor, in matter of incumbrance, removed by purchaser.* —
When a vendor has received from *his* vendor indemnity against a supposed in-
cumbrance, and retains it, and promises his vendee to remove the incumbrance,
but fails to do so, he is estopped from denying its validity, as against his vendee,
who has removed it.

APPEAL from the Chancery Court of Talladega.

Heard before the Hon. B. B. McCRAW.

The bill in this case was filed on the 24th December, 1870, by N. J. Mitchum, against John C. Hardigree, and sought to enforce a vendor's lien for the unpaid purchase-money of a tract of land, which was sold by the complainant to the deendant in October, 1867. No deed was executed at the time f the sale, but complainant gave his bond for titles, and the defendant executed his two notes for the purchase-money, each for $250. These notes were unpaid, and were made exhibits to the bill; and the bill alleged that they were given for the full amount of the purchase-money. The defendant alleged in his answer, that the price of the land, as agreed between the parties, was $875, of which $375 was paid in cash; and that he had paid the further sum of $325 for the land, under a purchase at sheriff's sale in January, 1868, under an execution issued on a judgment against one Daniel Carmichael, from whom the complainant had bought the land in 1864. This judgment was rendered in 1860, and executions on it were regularly kept up until 1862. The defendant insisted in his answer, that the existence of this judgment was well known to the complainant at the time when the contract between them was made, but was not known to him, and was concealed from him by the complainant; and he filed a cross-bill, asking a rescission of the contract on account of this fraud, or an abatement of the purchase-money, *pro tanto*, on account of the money paid by him under this judgment. On final hearing, the chancellor dismissed the cross-bill, and rendered a decree for the complainant; and his decree is now assigned as error.

JOHN HENDERSON and R. D. RUGELY, for appellant.

S. K. McSPADDEN, *contra*.

BRICKELL, J. — The bill was filed by the appellee, to enforce a lien for the unpaid purchase-money of a tract of land sold by him to the appellant in 1867. The lands were purchased by the appellee in 1864, from one Carmichael. When this purchase was made, there was a subsisting judgment against said Carmichael in the circuit court of Talladega, in which county the lands were situated, rendered in 1860. When the sale to the appellant was made, the appellee had knowledge of this judgment against Carmichael, and knew that it was as-

[Hardigree v. Mitchum.]

serted as a lien on the land.  He avowed to others a purpose to
sell the lands, obtain a partial payment in cash, and leave the
purchaser and the judgment creditor to contest the lien of the
judgment between themselves.   He concealed from the appel-
lant the existence of the judgment, and the lien which was
claimed for it.   He received a part of the purchase-money in
cash, and for the residue the two notes now sought to be en-
forced as a lien on the land.   He covenanted to make the ap-
pellant a good title on payment of the purchase-money.   When
the execution on the judgment in favor of Carmichael was
levied on the lands, he promised to attend the sale, and to pur-
chase the lands for the protection of the appellee.   He received
from Carmichael, his vendor, indemnity against the judgment.
He failed to attend the sheriff's sale ; and the appellee, to pro-
tect himself against an adverse title, if the lands should be pur-
chased at the sale by another, bid them in, paying $325, and
receiving the sheriff's deed.   At this time, both the appellant
and the appellee regarded the judgment against Carmichael,
and the execution thereon under which the sale was made, as a
valid lien on the lands, paramount to the title of the appellee ;
but this court, subsequently, declared the statute creating the
lien to be unconstitutional.   *Martin* v. *Hewitt*, 44 Ala. 418,
and other cases decided on its authority.   And the appellee
now insists, that, as there was no lien attached to the execu-
tion, the appellant is not entitled to a deduction from the un-
paid purchase-money of the sum so paid by him for the lands
at sheriff's sale.

1. A vendee of real estate, having his vendor's warranty
against incumbrances, has a legal right to remove them, and is
entitled to a deduction from the unpaid purchase-money of any
sum reasonably expended by him for that purpose.   *Smith* v.
*Pettus*, 1 Stew. & P. 107 ; *Harper* v. *Reno*, Freeman's Ch.
323.   He cannot buy in an incumbrance, and oppose it to the
title of the vendor · under whom he entered into possession.
Compensation, — reimbursement of the money he is compelled
to expend, — is the measure of his right.   *Harper* v. *Reno, supra.*
But, when he seeks compensation from his vendor, or a deduc-
tion from the unpaid purchase-money, because of his removal
of incumbrances on the title which are within the vendor's
covenants of warranty, he must show that the incumbrance
removed by him was an actual, subsisting incumbrance, capa-
ble of enforcement, and that the sum expended in its removal
was fair and reasonable.   It is a full answer for the vendor,
generally, that the supposed incumbrance was without legal
validity.

2. *Ignorantia legis non excusat*, is a maxim of the common
law, founded not only in expediency or policy, but in necessity.

If ignorance of law could be admitted in judicial proceedings, as a ground of complaint, or of defence, courts would be involved and perplexed with questions incapable of any just solution, and embarrassed by inquiries almost interminable, until the administration of justice would become in effect impracticable. There would be but few cases, in which one party or the other would not allege it as a ground of exemption; and the extent of the legal knowledge of each individual suitor, not his acts or words, would be the material fact on which judgments would be founded. The fact itself is incapable of proof by evidence of the character demanded in courts of justice. It is really insoluble, for it is in its very nature rather matter of conjecture, or mere inference, than of fact. The maxim prevails in a court of equity, as it does in a court of law. *Jones* v. *Watkins*, 1 Stew. 18; *Dill* v. *Shahan*, 25 Ala. 694; *Gwynn* v. *Hamilton*, 29 Ala. 233. But there are exceptions to its operation; or, rather, there are cases in which it is not rigidly enforced. If the ignorance or mistake of law is induced by fraud, or imposition, or undue influence, or an abuse of confidence springing out of peculiar relations existing between the parties, the application of the maxim is relaxed. 1 Story's Equity, §§ 111–38; *Haden* v. *Ware*, 15 Ala. 149.

3. When the appellant purchased the lands at sheriff's sale, it was the prevailing opinion in the community, and with the bar, that the judgment was a lien. The statutes so expressly declared. Whether they conformed to, or were violative of the constitution and laws and public policy of the United States, was a question which had not been the subject of a direct judicial decision. The principles announced by this court in *Watson* v. *Stone* (40 Ala. 451), would have fully vindicated their validity. That decision was followed in subsequent cases, and applied to varying facts. It was generally accepted and recognized as conclusively establishing the validity of legislation during the war, though its tendency was to impair the supremacy of the federal authority. Not until after the appellant had purchased at sheriff's sale, and until the decision of this court in *Ray* v. *Thompson* (43 Ala. 434), *Powell* v. *Boon & Boothe* (Ib. 439), *Martin* v. *Hewitt* (*supra*), was confidence in the former decisions disturbed. They had been rules of civil conduct — expositions of the law on a question of difficulty and novelty in our jurisprudence, in obedience to which titles to property had been lost and acquired, and settlements of contracts and trusts adjusted.

It is true that, in contemplation of law, all its rules and principles are deemed certain, although they may not have been the matter of public adjudication. The theory is, *Id certum est, quod certum reddi potest;* and that the province of

judicial decisions is, not to make, but to declare the law. When the courts have pronounced the law, and it has become known to, and recognized in the community, though subsequent research and a more deliberate examination may compel a reversal of the decision, ignorance or mistake of the law cannot be invoked or imputed, to work a forfeiture of rights acquired under the former decision. The peace of the community; the quieting of litigation; the repose of titles; the confidence judicial decisions should inspire; every consideration of policy, inducing the acceptation of the maxim that ignorance or mistake of law will not excuse, concur in compelling us not to give the decision in *Martin* v. *Hewitt*, and subsequent cases, a retrospective operation, which would, contrary to the intention of parties, defeat acts done, or contracts executed, in reliance on former adjudications.

In considering this question, Chancellor KENT, in *Lyon* v. *Richmond* (2 Johns. Ch. 59), says: "Much was said respecting a decision of the court of errors in another cause, in the year 1813, by which it is inferred, that if the sureties had been permitted to have prosecuted a writ of error on the judgment against Richmond, they would have been successful. Whether this would have been the case, and the judgment against Richmond, and the judgment reversed on error in 1813, have been deemed so analogous in their circumstances as to have led to the same conclusion, is a question not before me, and which I shall not undertake to decide. I have nothing to do with such an inquiry. A subsequent decision of a higher court, in a different case, giving a different exposition of a point of law from the one declared and known when a settlement between parties takes place, cannot have a retrospective effect, and overturn such settlement. The courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of facts, though under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind. And to permit a subsequent judicial decision in any one given case, on a point of law, to open or annul everything that has been done in other cases of the like kind for years before, under a different understanding of the law, would lead to the most pernicious consequences. Fortunately for the peace and happiness of society, there is no such pernicious precedent to be found. This case, therefore, is to be decided according to the existing state of things when the settlement in question took place."

When the appellant made the purchase at sheriff's sale, according to the law as then announced, he was removing an incumbrance on the title the appellee had warranted. He

converted a threatened total breach of the appellee's covenant, which would have rendered him liable to refund the money appellant had paid him, and operated an entire rescission of the sale, into one partial in its character, subjecting him only to a set-off, or recoupment, of the sum reasonably paid for the extinguishment of the incumbrance. No diligence on the part of the appellant could have imparted to him any knowledge of the legal invalidity of the supposed incumbrance. No notice to him of that invalidity, or that it was so regarded by the appellee, was given. On the contrary, the appellee shared in his ignorance or mistake of the law, and had promised performance of the duty primary upon him in legal contemplation, — the removal of the incumbrance. It would be a reproach to the law, if the appellee could resist the claim of the appellant. It would give him an inequitable and unconscientious advantage, and subject the appellant to a loss he should not in sound morals bear.

4. Under the particular facts of this case, the appellee is estopped from denying the validity of the lien. He has, on the supposition of its validity, received from his vendor full indemnity against the judgment, and retains it. A court of equity would lend its sanction to a gross fraud, if he was now permitted, as against his vendee, to deny the validity of the lien, and compel him to bear a loss he is bound by his contract with his vendor to prevent.

The appellant was, in every view of the case, entitled to a deduction from the unpaid purchase-money, of the sum he paid for the lands at sheriff's sale. The chancellor *erred* in not so decreeing; and for that error the decree is reversed, and the cause remanded.

PETERS, C. J. — The majority of the court do not consider themselves bound, except as to the result of the opinion in this case. Upon the reasons and numerous points involved in the discussion that leads to it, they express no opinion.