## KIDD *vs.* MONTAGUE.

1. The Act of 1848, (Pamphlet Acts, 63,) "securing to married women their separate estates," &c., does not affect the husband's right to reduce to possession his wife's choses in action, which vested in him on his marriage prior to the passage of the act.

2. A decree of the Orphans' Court, in favor of husband and wife for the wife's distributive share of an estate, cannot be amended at a subsequent term *nunc pro tunc*, in favor of husband and wife for the separate use of the wife, when the record does not disclose the name of the wife, and show that her interest in the estate accrued after the passage of the Act of 1848.

ERROR to the Court of Probate of Marengo.

ON the final settlement of the estate of Reuben Vaughan, deceased, at the June Term, 1849, of the Court of Probate of Marengo county, a decree was rendered in favor of R. V. Montague and wife, A. J. Kidd and Wife, Henry Dugger and wife, Gaskett and wife, and White and wife, for the respective distributive shares of the wife. At the September Term of the court, on motion of Montague's attorney, it was ordered, that the decree be so amended *nunc pro tunc*, that the distributive share in each case should stand decreed to husband and wife for the separate use of the wife, and the decree was amended accordingly.

HENLEY, for plaintiff in error:

I. It is clearly settled, by a long and unbroken chain of authorities, that marriage is an absolute gift to the husband of all the personal property of the wife in her possession at the time of the marriage, and also of such of her choses in action as he may reduce to his possession during the coverture.—Legg v. Legg, 8 Mass. 99-101; Howe v. Bigelow, 13 Mass. 384; Cl. on H. & W. 1-2-3-4.

A legacy to the wife vests absolutely in the husband, and he may release it either before or after it becomes payable.— Commonwealth v. Manly, 12 Pick. 173-5. So of the wife's distributive share of an estate.—Ib.; 2 Bro. C. C. 589; 1 Anstr. 63. So a share of personal estate accruing in right of the wife during coverture, vests even before distribution made absolutely in the husband, and does not, in the event of the death of the husband, survive to the wife.—Griswold v. Perriman, 3 Conn. 564; Lee v. Wheeler, 4 Ga. 541; 8 Mass. 229-30; Cary v. Taylor, 2 Ver. 302. So he has control of a legacy given to his wife generally, and may release or assign it by a deed to which his wife is not a party.—Tucker v. Gordon, 5 New H. 564. So the husband may sue in his own right after the death of his wife, for a legacy accruing to the wife during coverture.—Goddard v. Johnson 15 Pick. 352-3; 3 Rawle, 199.

II. To enable the husband to secure and enjoy the benefit of these rights, the law has placed within his reach and under his control all the requisite means.

1. He may sue for and recover her choses in action without her consent.—Clan. on H. & W. 4. Some of the authorities hold that such suit must be in the joint names of the husband and wife.—Ib. Yet it is held in some respectable authorities, that he may sue in his own name alone.—14 Pick. 353; Shuttleworth v. Noyes & Downs, 8 Mass. 229; Tucker v. Gordon, 5 New H. 564.

2. He may not only sue and recover judgment for his wife's choses in action, but may also proceed to enforce by execution or otherwise the collection of such judgments to his own use and benefit.—1 Dan. Ab. 342; 10 Mod. 160-66; 3 Salk. 63. So where a judgment has been obtained by both husband and wife, it has been held that he alone may sue out a *scire facias* for the damages and costs.—Clan. on H. & W. 4-5. So the wife's right of survivorship to her choses in action may be barred by a judgment recovered for them during the coverture, in the joint names of husband and wife.—Clan. on H. & W. 112-13; McGee v. Ford, 5 Smedes & M. 769.

2. There seems to be no limit to this right to prosecute to judgment and enforce the collection of the wife's choses in action, so far as the action of the courts of law is concerned, and whatever exceptions or limitations there may be to the right, they are found exclusively in the jurisdiction and actions of the courts of equity. At law the rights of the husband are uncontrolled. If the wife wishes to recover such choses to her sole and separate use, she must resort to a court of equity.—Clan. on H. & W. 440-1-2.

4. But it is insisted that even equity would not interpose for the benefit of the wife, except on a proper case shown. And even then equity would only require that the husband should settle a part of the property or money collected to the separate use of the wife, leaving the husband to the uncontrolled enjoyment of the remainder.

III. If the foregoing positions be correct, it seems to result as a necessary consequence, that the husband is and must be clothed with the legal title to his wife's choses in action. Without this he could not sue for and recover possession of such choses in action. It is only by being invested with such legal title as a means, that he can secure the end of possession and enjoyment of such choses.

1. It may be assumed then, that the husband's legal title vests whenever the wife's right accrues.

2. That such legal title cannot be divested by any power or authority, other than that of the husband himself, or by his consent.

IV. If the foregoing points be well taken, it results that long before the passage of the act of 1848, Kidd, the husband, was invested with the legal title to his wife's share in her father's estate; and the statute itself would be inoperative to the extent of such share, even if in express terms it embraced this case. The act could not affect the legal title to property which had become vested prior to the passage of the act; and so it has been held in a similar case in Mississippi.—McGee v. Ford, 5 Smedes & M. 769.

V. But it is contended, lastly, that the act of 1848 does not, either in letter or spirit, embrace such a case as this. The act is evidently prospective. There is not a term in it that seems to refer to the past. Its language is, " When a descent, gift, demise or otherwise, shall accrue to any woman," &c., referring very evidently to the future, and not to the past.

In the case of R. Vaughan's estate, all the rights of the several distributees had accrued long before the act was passed. Kidd's right to his wife's share had become a vested right in him, and he was in the prosecution of his legal rights, by the means the law had given him, to reduce it into possession, when the act of 1848 was passed.

In neither of the cases of Fagan v. Fagan, 15 Ala. 341, and Key's Adm'r v. Vaughan, ib. 500, was the question in relation to the application of the act of 1848 raised by the counsel engaged in the case, nor did the facts of the case necessarily require the decision.

MANNING, contra:

1. Under the act of March 1848, " securing to married women their separate estates," &c., the decree of an Orphans' Court upon the settlement of an estate of which a married woman is distributee, should be in favor of the husband and wife, for the separate use of the wife.—Fagan's Adm'r v. Fagan's Dist., 15 Ala. 341; Key's Adm'r v. Vaughan et al., ib. 500. And if the decree be rendered differently, the error is a clerical

misprision, and may be amended accordingly.—Same cases, and Parks v. Stonum, 8 Ala. 752. Upon the marriage of a man to a woman having a right to personal property, or a chose in action, he did not become entitled to it by contract; but it went to him by operation of law, (the common law,) which did not, in respect of such things, recognize her separate existence. Her existence was merged in that of her husband; and when, therefore, the property came to her possession, it was by the law regarded as in his possession, and by operation thereof, and not by the direct contract of the parties, became his. Hence it was that courts of chancery, even before the act of 1848, exercised their powers so as to secure such choses in action to the use of the wife, which they could not have done if the husband had acquired them by contract. And now by the act referred to, the Orphans' Courts are required, in such cases as the present, to do what the courts of chancery did before this enactment.

2. Amendment of a judgment *nuc pro tunc*, may in a proper case, where the error is apparent from the record, be made at any time, and without notice.—Bentley v. Wright, 3 Ala. 609. Nay, this court itself will correct such apparent errors at the costs of the plaintiff in error; and it would be very strange that this court should now, because the plaintiff in error had not notice of the motion to amend below, restore the error then existing by the misprision of the clerk, when it would immediately turn round and restore the amendment by its own act here.— Smith v. Robinson, 11 Ala. 271; Loomis v. Allen, 7 ib. 706; Mason v. Smith, 1 Stew. 275; Wilkerson v. Goldthwaite, 1 S. & P. 159; Moody v. Keener, 9 Por. 252; 6 ib. 844.

CHILTON, J.—The estate here distributed was in process of administration several years anterior to the passage of the act of the 1st March, 1848, for "Securing to married women their separate estates," &c. And it seems to be conceded, as the record persuasively shows, that the plaintiff in error married one of the distributees before the enactment of the law. The question then comes up, whether this act was intended to secure to the wife choses in action which accrued anterior to its passage, but which the husband had not assigned or reduced into his possession.

The act provides, "That if any woman, before and at the

time of marriage, shall have and own any property, or estate, whether the same be real, personal, or mixed, in possession, remainder or reversion, or if any such estate shall, after marriage, by descent, gift, demise or otherwise, accrue to any woman; all such estate, or other property, shall be taken, held and esteemed in law as the separate estate of such woman, and for her sole and separate use, notwithstanding her coverture: And no husband shall by his marriage acquire a right to the property which his wife had upon his marriage, or which she may after acquire by descent, gift, demise or otherwise," &c.

There is nothing in the language of this act to indicate that it was intended to have a retroactive effect. On the contrary, the terms in which it is couched seem to limit its operation to after acquired property. The general rule, says Mr. Dwarris, is, that no statute is to have a retrospect beyond the time of its commencement, and he adds, that this is not only the doctrine of the English law, but it is also founded on the principles of general jurisprudence.—Dwar. on St. 680.

In Gilmore v. Shuter, 2 Lev. 227, a verbal promise was made to give or bequeath a sum of money in consideration of marriage. An action was brought against the executors on this promise, and the question made upon the special verdict was, whether this promise, which was made before the 24th day of June, 1677, the day on which the statute 29 Car., 2 ch. 3, was passed, was within that statute. The court held that it could not be presumed that the statute was to have a retrospect, so as to take away a right of action which the plaintiff was entitled to before the time of its commencement. But we lately had occasion to examine this question, in the case of Gould v. Hayes, at the present term, which sustains the view here taken, and renders it unnecessary to elaborate this point.

If in this case the husband, at the time of the passage of this law, had the right to reduce the share of the estate of Reuben Vaughan to which the wife was entitled, into possession, by proceedings in the Orphans' Court, whereby his absolute right would have attached *as husband*, this right remained unaffected by the the act. It was a *right* which vested in him by virtue of the marriage, and of which the Legislature did not attempt to deprive him.

The case of McGee & Wife v. Forde et al., 5 Smedes & M.

Kidd v. Montague.

769, upon the statute of Mississippi for the protection of married women, (H. & H. 332,) also supports the view we have taken of this statute.

The fact that the court of chancery will make the husband do equity, by requiring him to make a suitable provision for the wife, before it will enable him to recover the wife's choses in action, does not militate against our construction of the statute. The wife has the same equity notwithstanding the statute; that is, her equity with respect to property, or rights of property, which accrued to her before the statute, and which had not been reduced to possession by the husband, as husband, remains unaffected by the act, and their respective rights are to be determined without regard to the act.

2. With respect to the amendment, we need only say, that in a proper case, did it appear from the record that the share to be decreed was subject to the statute above referred to, and who the wife was, so as to render the decree in favor of the husband and wife for the use of the wife, there would be no doubt but that the court could have amended the decree so as to have made it conform to the law. But, in the case before us, there was nothing to amend by, so far as the record discloses. The cases in 15 Ala., of Greene v. Fagan's Dist's, 335, in which I did not sit, having been consulted as counsel before I came upon the bench, and Key v. Vaughan & Wife, 497, only show how the judgment should be rendered, according to the statute; but nothing is decided in either of them, nor was any point raised in them, as to the effect of the statute upon the rights of the parties, which had accrued before its passage.

A construction which gives to a statute a retrospective effect, has always been esteemed odious, and will never be indulged unless the language employed requires it. Such statutes are justly considered as violative of every sound principle.—Dwar. on Stat. 681, and cases there cited; 9 Law Lib. 35.

Let the decree be reversed and the cause remanded.