# Hemphill *v.* Moody.

*Bill in Equity by Administrator to enforce Equitable Set-off, and for Settlement of Estate.*

1. *Mistake, as ground of equitable relief.*—Courts will not reform or redress those acts of parties which are the result of pure mistake of law, since all men are conclusively presumed to know the law; but this principle, as applicable to civil cases, being productive of hardship, is regarded as *stricti juris*, and the courts willingly seize upon any mistake of fact, when intermixed with a mistake of law, and make it the ground of relief.

2. *Same.*—Money paid under a mistake of law, can not be recovered by action, either at law or in equity; but, when money is paid to a person to whom it properly belongs, though under a mistake as to the right in which it accrues to him, the debt is extinguished, and he can not again enforce payment of his claim in his lawful right.

3. *"Married women's" laws not retroactive.*—The several statutes for the protection of the estates of married women, known as the "married woman's laws," have no retroactive operation, and do not affect the rights of property of husband or wife in the estates of decedents, testate or intestate, which vested in them prior to the passage of those statutes.

4. *Will construed as creating partial intestacy.*—Where the testator devised certain lands to his wife during life or widowhood, and directed them to be sold on her death or marriage, on a credit of one, two, and three years, but made no specific disposition of the proceeds of sale; and the residuary clause directed the "balance of my [his] property, which is not given away in this will," to be sold on a credit of one, two, three, four, five, or six years, and the proceeds of sale to be equally divided among his children; *held*, that there was an intestacy as to the proceeds of sale of the lands devised to the widow.

5. *Executor's assent to legacy; husband's marital rights.*—An executor's assent to a legacy of an estate for life, or other particular estate, is an assent to the legacy in remainder, and divests all title to the property out of the estate; and where such remainder was vested in a woman who afterwards married, prior to the passage of the "married woman's law" of 1848, her husband's marital rights at once attached, the possession of the tenant for life being the possession of the remainder-man.

6. *Same; land directed to be sold at termination of life-estate.*—This rule does not apply, where lands are devised to the testator's widow for life, and are directed to be sold on her death: in such case, the interest of the remaindermen, whether held under the will or under the statute of descent and distribution, is personal property, and is not affected by the possession of the tenant for life.

7. *Husband's marital rights.*—At common law, and prior to the passage of
Vol. LXIV.

[Hemphill v. Moody.]

the several "married women's laws" of this State, the husband's marital rights did not attach to the wife's distributive interest in an intestate's estate, unless he reduced it to possession during coverture; and until such reduction to possession, he could not release it, nor, by any act, agreement, or admission, estop the wife from asserting her rights to it.

8. *Decedent's estate; when administrator may remove settlement into chancery.*—If an administrator pays, by mistake, to the personal representative of the deceased husband, moneys which properly belong to the estate of the deceased wife: and such moneys are distributed, in due course of administration, to the distributees of the husband's estate, who are also the distributees of the wife's estate; although the administrator making the wrongful payment can not claim a credit for it on settlement of his accounts, he can make it available in the Probate Court, in having satisfaction entered, *pro tanto*, of the decrees in favor of the distributees who received the benefit of it, if they are parties to the settlement; but, if they are not parties to the settlement, though the wife's personal representative is a party, the administrator can not obtain relief in that court, and may therefore remove the settlement into chancery.

APPEAL from the Chancery Court of Tuskaloosa.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 24th May, 1879, by Frank S. Moody, as the administrator *de bonis non*, with the will annexed, of the estate of Edward Sims, deceased, against Felix F. Hemphill and his wife, Mary J., who was a daughter of said Sims; and against the personal representative and distributees of the estate of Jerusha Ready, deceased, who was also a daughter of said Sims, and the wife of Aaron Ready, deceased; and against several other persons, not necessary to be named, who were legatees under the will of said Sims, and distributees of his estate. It sought to remove the settlement of the estate of Sims, from the Probate Court of Tuskaloosa, in which it had been begun, into the Chancery Court; to establish an equitable set-off against the distributees of the estate of Jerusha Ready, on account of the payment of $2,000, which the complainant had wrongfully made to the personal representative of her husband, said Aaron Ready, and of which, as the bill alleged, said distributees had received the benefit on the settlement and distribution of his estate; and to enforce an equitable estoppel against said Hemphill and wife, in regard to this wrongful payment, on the ground that Hemphill had agreed and assented to said payment at the time it was made. The testator, Sims, died in Tuskaloosa, where he resided, in 1838; and his last will and testament was there duly admitted to probate. By said will, a copy of which was made an exhibit to the bill, the testator devised and bequeathed to his wife, during her life or widowhood, certain lands, with slaves and other property, adding, "But, if she should marry, or die, then, and in that case, it is my will that all the property I have left her should be sold, on one, two, and three years' credit, with interest after one year, except the negroes," &c. He also devised other lands to his

several children, and added a residuary clause in these words:
"The balance of my property, which is not given away in this
will, I wish sold to the highest bidder, on a credit of one, two,
three, four, five, or six years, with interest from day of sale;
the purchaser giving bond and good securities, and not to
have titles to lands nor lots till all the purchase-money is
paid, and then to be equally divided between my above-named
children." The part of the will containing the foregoing pro-
visions was dated February 2d, 1838; but another part was
added, dated February 5th, 1838, as follows: " Being still in
my proper senses, and on a further consideration of all the
matters and things, I have thought proper to alter a part of
the first part of my will; that is, in case my beloved wife
never marries, I wish for her to have five thousand dollars
worth of property left her, her life-time or widowhood, she
having the choice of it, to be hers forever, to do as she may
think proper with; and further, by Mr. Aaron Ready putting
in what I have given him heretofore, and his having rendered
services which the others could not do, I give him, extra, two
thousand dollars. Now, in explanation of this will, as it is
done just on my starting to New York, and in a hurry, my
will is, that the five thousand dollars may be taken out of
what I give my beloved wife, and the two thousand dollars
extra, which I give Aaron Ready; the balance of my prop-
erty, money, and everything, I leave, to be equally divided
among my children," &c.

It appears that Aaron Ready first administered on the tes-
tator's estate, and that Mrs. Sims, the widow, survived until
1874; but neither of these facts is stated in the bill. Letters
of administration *de bonis non*, on said testator's estate, were
granted to the complainant on the 9th November, 1874; and
the lands which were devised to the widow for life, and
directed to be sold on her death, having been sold, as directed,
and the purchase-money received by the said administrator,
he paid $2,000, a part of said sum of money, on the 20th May,
1876, to E. A. Graham, as the administrator of the estate of
Aaron Ready, in satisfaction of the said legacy of $2,000,
which was supposed to be due and unpaid. On final settle-
ment of the complainant's accounts as administrator, in the
Probate Court of Tuskaloosa, in April, 1877, he claimed a
credit for this payment, and it was allowed by the Probate
Court, against the objections of said Hemphill and wife, who
duly excepted to the ruling and decision of the court, and
brought the case to this court by appeal; and this court re-
versed the decree of the Probate Court, and remanded the
cause, as shown by the report of the case.— *Hemphill v. Moody*,
62 Ala 510. The complainant thereupon filed his bill in this

case, asking a removal of the settlement into the Chancery Court, and seeking to get the benefit of this payment, on his final settlement, as against Hemphill and wife, and also against the children of Jerusha Ready, the wife of said Aaron Ready, who were alleged to be the distributees of her estate, and also the distributees of said Aaron Ready's estate. In reference to this payment to Ready, the bill, as amended, contained the following allegations: "That the said sum of $2,000 was paid by him, in discharge of said legacy to Aaron Ready, under a mistake of law and fact, in this: that the will of said Sims had been interpreted for the legatees therein named, by John J. Ormond, a man learned in the law, and formerly one of the justices of the Supreme Court of Alabama, who gave it as his opinion, as your orator is informed and believes, and so states, that said legacy was not payable until after the death of said testator's widow; and that this opinion was accepted and acted upon by the legatees aforesaid; and furthermore, that said payment was made by your orator under the belief and supposition that the interpretation put upon said will by said Ormond was a proper construction of said will, and had been accepted and concurred in by all the legatees under said will, and especially by said Ready and said Hemphill, and under the belief that said legatee had never been paid; and furthermore, that when said legacy was paid by complainant, and previous thereto, he was informed and believed that his predecessors in the administration of said estate, and the legatees under said will, and the original executors of said will, uninterruptedly admitted that said legacy had never been paid, and concurred in the desire that the same should be recognized and paid, as a valid and existing legacy under the will of said Sims." The bill alleged that Hemphill and his wife were married in 1846, and the complainant insisted that they were concluded by the payment, and ought not to be allowed to charge him with a *devastavit* on account of it, because Hemphill had assented to the payment at the time it was made, and had acquiesced in the construction placed on the will. As to the distributees of Jerusha Ready's estate, it was alleged that they were also the distributees of the estate of Aaron Ready, and had received from his administrator the $2,000 paid to him by the complainant, less the expenses of administration; that they were insolvent; that Aaron and Jerusha Ready had both been dead many years, and their estates had been finally settled and distributed; that letters of administration on the estate of the former had been granted to Graham, for the sole purpose of enabling him to collect and distribute the said $2,000; that the estate of Jerusha owed no debts, and

letters of administration on it had been granted to one of the defendants, only for the purpose of coercing payment a second time of their distributive portion of said sum of $2,000, which was alleged to be less than they had received from Graham. As to these distributees, on these facts, the complainant asked that he be allowed to retain as an equitable set-off, out of their proportionate share of said $2,000, and out of . other moneys in his hands decreed to them on the former settlement, so much as they had received from Graham out of the money paid to him by the complainant.

Hemphill and wife answered the bill, and incorporated in their answer a demurrer for want of equity, specially assigning the following (with other) causes of demurrer: 1st, that the complainant was concluded by the decree of the Probate Court; 2d, that he made the payment in his own wrong, and could have no relief against it, either at law, or in equity; 3d, that the facts stated did not establish an equitable estoppel; 4th, that the bill showed no sufficient reason for removing the settlement into the Chancery Court; 5th, that the facts alleged did not show any right to an equitable set-off; 6th, that the complainant's remedy, if he had any at all, was by action at law against the administrator of Aaron Ready's estate. The administrator and children of Jerusha Ready also answered, and demurred to the bill, assigning specially the same causes of demurrer. The chancellor overruled the demurrer on these grounds, and held that the bill contained equity. The appeal is sued out in the name of Hemphill and wife " *et al.,*" and the overruling of their demurrer to the bill is assigned as error.

A. C. HARGROVE, for appellants.—1. The question of equitable estoppel, as presented by the bill, is *res adjudicata*, having been urged on the former appeal, and necessarily involved in the decision then made. Even if the defense was not then made in the Probate Court, it might have been made, and no excuse is shown for the failure to make it —*Moore v. Leseuer & Wife*, 33 Ala. 237. 2. But the facts stated create no estoppel against either Hemphill or his wife.—*Jones v. Logan & McMorris*, 50 Ala. 493. 3. Having paid the money in his own wrong, the complainant can not recover it at law, nor use it in equity as a set-off against any lawful demand.—*Lesslie v. Richardson*, 60 Ala. 563; *Beene's Adm'r v. Collenberger & Co.*, 38 Ala. 647; *Town Council v. Burnett*, 34 Ala. 400. 4. The bill shows no right of set-off against the distributees of Jerusha Ready's estate.—*Jones v. Blair*, 57 Ala. 459; *Jones v. Brevard*, 59 Ala. 499; 2 Brick. Dig. 433. If any right of set-off existed, it was available in the Probate Court, and no ex-

[Hemphill v. Moody.]

cuse is shown for the failure to make it in that court.—*Moore v. Leseuer*, 33 Ala. 237.   5. The bill shows no sufficient cause for removing the settlement into equity.—*McNeill v. McNeill*, 36 Ala. 109; *Weakley v. Gurley's Adm'r*, 60 Ala. —, and cases cited.

J. M. MARTIN, and H. M. SOMERVILLE, *contra.*—Moody has no right of action against Graham, to whom he made the wrongful payment, because the latter has paid out the money in good faith, in the due course of administration, and can not be placed in *statu quo*.   But he has a right of action against those who received the money.—*Rutherford v. McIver*, 21 Ala. 757.   This right could not be enforced in the Probate Court, because the distributees who received the money are not parties to the settlement in that court, and can not be made parties; and an action at law would be fruitless, since they are insolvent.   His only remedy, then, is in equity, to enforce this claim as an equitable set-off, and prevent them from receiving payment of their debt a second time.   The payment was made under a mistake of law and fact, against which a court of equity will grant relief.—*Harrison v. Heflin*, 54 Ala. 560.   A court of equity will not permit a party, while retaining the benefit of a payment that has been made, to coerce payment a second time, but will hold him estopped. 1 Greenl. Ev. §§ 24, 204-8; 2 Ad. & El. 291.   A set-off may be made available in equity against the person really interested, though he is not a party to the record.—*Bowen v. Snell*, 9 Ala. 482; *Moody v. Robertson*, 46 Ala. 634.   As against Hemphill, the bill shows a clear case of estoppel, because he assented to the wrongful payment.   That he alone was entitled to the money, having married in 1846, see *Kidd v. Montague*, 19 Ala. 619.

STONE, J.—It is a maxim, born of necessity, that all men are conclusively presumed to know the law.   Without this, legal accountability could not be enforced, and judicial administration would be embarrassed at every step.   The necessity of this rule is more felt and acknowledged in criminal accountability, than in mere civil obligations.   As a corollary, there has grown up another maxim, that courts will not reform or redress those acts of parties, which are the result of pure mistake of law.—*Jones v. Watkins*, 1 Stew. 81; *Trustees v. Keller*, 1 Ala. 406; *Haden v. Ware*, 15 Ala. 149; *Dill v. Shahan*, 25 Ala. 694; *Town Council of Cahaba v. Burnett*, 34 Ala. 400; *Lesslie v. Richardson*, 60 Ala. 563. But, in civil proceedings, this rule, owing to its hardship, has been treated as one *stricti juris*; and if there was in-

[Hemphill v. Moody.]

termixed with the mistake of law, any mistake of fact, courts have willingly seized upon it, and made it the ground of relief. There is a class of cases, hard to distinguish from mistakes of law, where, through mistake, a written agreement contains substantially more or less than the parties intended, or where, from ignorance or want of skill in the draughtsman, the object and intention of the parties, as contemplated by the agreement, is not expressed in the written instrument, by reason of the use of inapt expressions ; in which the Court of Chancery, on clear and satisfactory proof of the mistake, will reform such agreement, and make it conform to the true intention of the contracting parties.—1 Brick. Dig. 681, §§ 606, 610. The principle on which courts relieve, in cases falling within this class, is that through ignorance, or misapprehension of the legal effect of the terms agreed upon, the parties have made a contract, variant in legal construction from the one intended.—*Trapp v. Moore*, 21 Ala. 6J3 ; *Larkins v. Biddle, Ib.* 252. We refer to this class of cases, not because they shed any direct light on the case in hand, but because they show that courts seize upon small circumstances, to relieve parties of a hard, though necessary rule. And there are other cases in which this rule is relaxed.—*Hardigree v. Mitchum*, 51 Ala. 151.

In the present case, Moody, the administrator of Sims, paid to the administrator of Aaron Ready two thousand dollars, the sum of a pecuniary legacy bequeathed by the will of Sims. In the case of *Hemphill v. Moody*, we held this payment was unauthorized, and that Moody was not entitled to a credit for it in his settlement as administrator of Sims. One purpose of the present bill is to have that payment applied to the extinguishment of the distributive interest of Aaron Ready's children in said estate. The averments of the bill are, that the children of Aaron Ready and the children of Jerusha Ready, his wife, daughter and legatee of testator Sims, are the same ; that they are insolvent; that the two thousand dollars, paid by mistake to Aaron Ready's administrator, were distributed and paid, less expenses of administration, to said children of Aaron and Jerusha Ready ; that in this way they, the children—distributees alike of Aaron and Jerusha Ready—have received of the moneys of complainant more than their share of the undistributed assets of the estate of testator Sims, and that it is contrary to equity and good conscience that they should again receive payment out of the private purse of complainant Moody. The answer, if we were allowed to look to it, denies that the children of Aaron Ready, and the children of Jerusha Ready, are entirely the same; sets up, that after the death of Jerusha Ready,

[Hemphill v. Moody.]

Aaron married a second time, and left issue by the second marriage, who shared in the distribution of the two thousand dollars, paid to Ready's administrator.  In the present state of the record, and on the present appeal, we can not know or inquire how this question stands.   Only the averments of the bill are before us.   Taking those averments as a guide, the share of the undistributed assets of testator's estate, to which Mrs. Ready's administratrix is entitled, is eleven or twelve hundred dollars.   There is no averment in the bill showing the amount of the two thousand dollars distributed and paid to the distributees of Aaron Ready, which went to the distributees of Jerusha Ready.   Guided, however, by the bill, the sum distributed and paid to them exceeds the distributive share of Jerusha Ready's estate in the undistributed assets. The bill avers that Jerusha Ready died many years ago ; that her estate owes no debts, and that the only function and duty her administratrix will be required to perform, is the distribution of her intestate's distributive share among her distributees, next of kin.

2.  We do not think this case, so far as it seeks relief against Jerusha Ready's distributees, stands on the naked principle of a suit to recover back money paid under a mistake of law. The bill makes no effort to recover the money back.   Its object is, to have a payment, actually made, applied in extinguishment or reduction of a debt or liability actually due and owing.   Guided, as we have said, by the averments of the bill, Moody, the complainant, was liable to pay—was indebted—to Jerusha Ready's estate, to be distributed and paid to her next of kin, eleven or twelve hundred dollars ; no more. He has paid, and they have received a larger sum than that, to which they had no other rightful claim.   They can not demand a second payment, on the technical ground that, when the payment was made, it was erroneously supposed to be due on another account.   Payment discharges a debt, no matter when, or by whom made.

3-4.  The will of Mr. Sims was probated in 1840.   Mary J. Sims, one of the legatees, intermarried with Hemphill in 1846, before the enactment of any of our statutes securing to married women their separate estates.   The fund in controversy accrued to the several claimants, legatees, under the will, or by descent; and, unless there be peculiar circumstances in this case, taking it out of the operation of the general rule, our statutes known as the 'woman's law' having nothing to do with the case.—*Kidd v. Montague*, 19 Ala. 619.   The will gives to Sarah Sims, widow of testator, real and personal property, to have, use and enjoy, during the term of her natural life or widowhood.   She entered upon the enjoyment

[Hemphill v. Moody.]

of the property, lived thirty-three or thirty-four years, without marrying a second time, and died in 1874. The will makes disposition of the remainder of the property as follows : " If she (said Sarah) should marry, or die, then, and in that case, it is my will that all the property I have left her should be sold, on one, two, and three years' credit, with interest after one year." Testator then makes a very humane provision for the private sale of the slaves, thus given to his wife for life or widowhood, " to those they are willing to go to, regardless of price, and not to be parted from their husbands and wives and children, in no event whatever." The will gives no direction for the disposition or distribution of the proceeds of the property thus given to the widow, and ordered, as above shown, to be sold, after the termination of her estate, on one, two, and three years' credit. Our reasons for this assertion are, that, with the exception of a few pecuniary legacies, the will is made up entirely of specific devises and bequests, with this residuary clause inserted subsequent to the direction for a sale, above copied, and near the close of the will as first drawn, namely : " The balance of my property which is not given away in this will, I wish sold to the highest bidder, on a credit of one, two, three, four, five, or six years, with interest from day of sale, . . . and then to be equally divided between my above-named children." The property first directed to be sold—the residue of the title after the termination of the wife's estate—is to be sold on one, two, and three years' credit, and not a word said about the disposition of the proceeds. In the residuary clause, after prescribing other and different terms of sale, it is added, " then to be equally divided between my above-named children."

5. It has been often and uniformly held in this State, that if, by the terms of the will, a life-estate, or other estate less than an absolute title, is given to one, with remainder on its termination to another, the assent of the executor to the life-estate is an assent to the estate in remainder, and divests all title to the property out of testator's estate. This is, as to such property, complete administration ; and the possession of the life-tenant is the possession of the remainder-man, if it be what is called a vested remainder. Hence, before the enactment of the "woman's law," if a *feme*, owner in remainder of a chattel then in the possession of a tenant for life, took husband, the marital rights of the husband attached *eo instanti ;* for the possession of the tenant for life was the possession of the remainder-man.—*Magee v. Toland*, 8 Por. 36 ; *Pitts v. Curtis*, 4 Ala. 350 ; *Broome v. King*, 10 Ala. 819 ;

*Chambers v. Perry,* 17 Ala. 726 ; *Gibson v. Land,* 17 Ala. 117 ; *Walker v. Fenner,* 28 Ala. 367.

6. The present case stands on different facts. The will gave to the widow, during life or widowhood, real and personal property, to be enjoyed by her in its then form, without change or conversion. In the lands she took a defeasible freehold estate. The personal property perished during the continuance of the particular estate, and left only the land at the time of her death. The will, by directing a sale of the land at the termination of the particular estate, converted it, at that time, into money.—1 Jarm. on Wills, ed. by Perkins, 477, marg. 524. This principle rests on the doctrine of intention. "It is presumed that the parties, in directing money to be invested in land, or land to be turned into money, intend that the property shall assume the very character of the property into which it is to be converted, whatever may be the manner in which that direction is given." 1 Sto. Eq. Ju. § 791. We have, then, the case of a devise of realty during the tenancy of the first taker, converted into personalty at the termination of the particular estate. If we were to apply the doctrine, that the possession of the life-tenant is the possession of the remainder-man, what would be the result? The possession of Mrs. Sims was that of a free-holder in lands ; making that the possession of Mrs. Hemphill, if she takes in remainder, then, according to the rules of the common law, Hemphill, her husband, by virtue of his marriage, became seized of the estate for the life of his wife, raised to an estate for his own life as tenant by the curtesy, if there was issue of the marriage born alive.—*Cheek v. Waldrum,* 25 Ala. 152 ; *Bishop v. Blair,* 36 Ala. 80 ; *Bibb v. McKinley,* 9 Por. 636. This would have the effect of declaring that the seizin, by which realty is held, defines the rule by which personalty shall be owned and possessed ; for the lands, as we have shown, became personalty at the death of Mrs. Sims. Regarded as land, Hemphill, the husband, could, at most, claim a life-estate ; as personalty, the absolute property would be his.—2 Brick. Dig. 72, § 51. There are two insurmountable obstacles to applying the doctrine invoked in this case: First, the possession of the tenant of the particular estate cannot be the possession of the remainder-man, if the will created one ; second, the will creates no estate in remainder.

7. There being no testamentary disposition of the *residuum* of the estate given to Mrs. Sims during her life or widowhood, it follows that, as to the proceeds of the land, the testator died intestate. The property then reverts to the estate of the testator, for farther and complete administration by

his personal representative. The fund in controversy in this case was a vested interest, owned by Mrs. Hemphill at the time of her marriage in 1846, and is a *chose in action* belonging to the wife, governed by the rules of the common law as to the husband's marital right to reduce it to possession, and thus become the owner of it. This may never happen. He may not live to recover it. He may elect not to assert his marital rights over it. It is the right of the wife, or of some friend for her, to require a settlement to be made on her by her husband, before he obtains possession of her distributive interest.—*Kidd v. Montague, supra ;* 1 Bright on H. & W. 18, 48, 74, 82-3. Hemphill, the husband, had and has no such ownership or interest in his wife's distributive share in this fund, as enables him to release it without valuable consideration, or to estop her from asserting her right to it, by any act, agreement, or admission of his. The present bill shows no right to equitable relief against Mrs. Hemphill, or any other parties standing in the same relation to the estate which she occupies.

8. It is certainly true, that when, by reason of its limited powers, the Probate Court is unable to do complete justice in the settlement of administrations, the personal representative, or any other party in interest, may, at any stage of the proceedings before final decree, invoke the larger powers of the Chancery Court, and have the settlement removed to, and made in that court.—1 Brick. Dig. 647, § 120 ; *McNeill v. McNeill*, 36 Ala. 109 ; *Hatchett v. Billingslea*, at the present term. But this rule only obtains where there are trusts, or other grounds of equitable relief, which precede or enter into the settlement itself. The rule, which is itself exceptional when invoked by the personal representative, can have no application, in a case like the present, where the only ground on which the jurisdiction is rested, is a mistake committed by the personal representative, and the only relief he can claim is to have a payment heretofore made applied to the extinguishment of one of the distributive interests. This exerts no influence whatever in the matter of making the final settlement, and becomes important only in having the decree in favor of the Ready distributive interest entered satisfied. The bill, so far as it seeks to remove the settlement of Moody's administration into the Chancery Court, and so far as it prayed and obtained an injunction, restraining the completion of settlement in the Probate Court, is without equity.

In one aspect, this bill, with proper amendments, and with proper parties, is not without equity. We have shown that, if the distributees of Jerusha Ready have been paid the money, in whole or in part, which Moody by mistake paid to

Aaron Ready's administrator, then, to the extent they have been so paid, they should not be paid a second time. If they were parties, distributees, to the settlement in the Probate Court, that court has ample power to hear and determine the question of such payment, and to decree to them a smaller sum, or nothing, as the proof might show they had been partially or wholly paid.— *Wilson v. Randall*, 37 Ala. 74. But that is not this case. The payment was made to Aaron Ready's administrator, and, according to the averments of the bill, distributed and paid by him to the distributees of Aaron Ready, who are also distributees of Jerusha Ready. The distributive share in the present settlement is due and payable to the personal representative of Jerusha Ready's estate, for administration and distribution by her. If, as the bill avers, the estate of Jerusha Ready owes no debts, and the fund when received, less expenses of administration, will be for distribution among the same persons who have been paid as distributees of Aaron Ready's estate, out of said two thousand dollars, then the Probate Court, by reason of its limited powers, has not the requisite jurisdiction to bring the necessary parties before it, take the accounts, and grant the proper relief. Only the Chancery Court can do this ; and to enable it to enter upon the inquiry, and grant the relief, the personal representative and distributees of Jerusha Ready are necessary parties defendant. In such proceeding, the solvency *vel non* of such distributees is an immaterial inquiry.

The decree of the chancellor is reversed, and a decree here rendered, sustaining the demurrer to every feature of the bill, except that which seeks relief against the personal representative and distributees of Jerusha Ready ; and to that extent, the bill is retained. The injunction against proceeding with the settlement in the Probate Court is dissolved. Let the costs of appeal in this court, and in the court below, be paid by the appellee.