*Kinney, Ballou & McClanahan* for plaintiff.
*C. F. Peterson* for defendant.

---

# IN THE MATTER OF THE GUARDIANSHIP OF KA-LUA KAPUKINI, a Spendthrift.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JANUARY 25, 1899.          DECIDED MAY 31, 1899.

JUDD, C.J., WHITING, J., AND CIRCUIT JUDGE STANLEY, IN PLACE OF FREAR, J., ABSENT.

Marriage of a female ward under guardianship as a spendthrift does not of itself terminate such guardianship, but the guardian may be discharged "by any judge in probate when it shall appear to him, on the application of the ward, or otherwise, that said guardianship is no longer necessary." (See Civil L., Section 1975.)
The court denied motion to discharge guardian.

#### OPINION OF THE COURT BY WHITING, J.

In 1886 the probate records of the Supreme Court, now in the Circuit Court of the First Judicial Circuit, show that a guardian was appointed over Kalua Kapukini, she then being a minor. In 1889 the guardian died and, on October 9, 1889, J. A. Magoon was appointed her guardian. In 1892 Kalua became of age, but took no steps to have the guardian's accounts settled and the guardian discharged until December, 1893. On February 2, 1894, the accounts of the guardian were found correct and on the same day J. A. Magoon filed his petition to be ap-

pointed guardian of Kalua on the statutory grounds of her being a spendthrift. Kalua also filed, on February 3, 1894, her petition asking that if the court finds that she cannot keep, control or take charge of her property, then, that R. Makahalupa be appointed her guardian. On February 20, 1894, a hearing was had and the court, the First Circuit Judge in probate, appointed J. A. Magoon as guardian of Kalua, a spendthrift. Kalua was present and also was represented by counsel, and testimony was taken on her behalf. Kalua became of age in April, 1892, and since the appointment of a guardian over her as a spendthrift, she has married, and is now living with her husband. The ward, Kalua, now petitions for revocation of guardianship and removal of guardian for cause stated in the petition and also for termination of the guardianship on the ground that the marriage of the ward operated as a matter of law to terminate the relation of guardian and ward and to discharge the guardian. The First Circuit Judge denied the petition and the ward appealed.

Our statute relating to guardians and wards, provides that "the marriage of any female who is under guardianship *as a minor*, shall operate as a legal discharge to her guardian; and the guardian of any insane person or spendthrift may be discharged by any judge of probate, when it shall appear to him, on the application of the ward, or otherwise, that said guardianship is no longer necessary." (Section 1362 Comp. L., Section 1975 Civil L.)

This section confines its declaration that the marriage of the ward shall operate as a legal discharge to her guardian to cases where the ward is under guardianship *as a minor*. At the same time the marriage of a female ward, even though the reason of the guardianship was that she was a spendthrift, of necessity terminates the guardianship so far as her person is concerned. The power which our statute (Section 1355 Comp. L.) gives to, and the duty which it imposes upon, the guardian of a spendthrift, that he "shall have the care and custody of the person of the ward," is inconsistent with the ward's relation to her husband. "The marriage of a ward of either sex of necessity terminates the

guardianship over the ward's person. This principle is of universal acceptance so far as applied to the person of a female ward, whether she marry a minor or an adult, for her relation to a husband is inconsistent with the power of a guardian over her person." Woerner on Guardianship, pp. 335, 336. "The lawful marriage of any ward, whether male or female, must necessarily affect the rights of the guardian. So far as the ward's person is concerned, there can be no question that the guardianship ends. Marriage is paramount to all other relations, and its proper continuance being inconsistent with the guardianship of the person, the latter yields to it, whatever may be the sex of the ward." Schouler's Dom. Rel., p. 425.

The guardianship of the petitioner, so far as it concerned her person, terminated upon her marriage. But so far as her property is concerned, the same reasons do not exist in favor of the termination of the guardianship. It may be that prior to the enactment of the Married Woman's Act of 1888, it could properly be said that the reason for guardianship over a woman's property ended with her marriage, because at that time the husband was practically the owner, or at least held full control, of all of the wife's property; but since the passage of that Act the wife has full control of all her property, excepting only as to the selling or mortgaging of real estate, in which cases her husband's consent is necessary. Although she cannot sell or mortgage her lands, she can lease the same for any term of years either for a yearly rental or for a lump sum, and in this way a woman, if she is inclined to do so, can as successfully lessen and waste her estate as by selling or mortgaging. The necessity for the guardianship of her property, if she is a spendthrift, is not in any material degree lessened by reason of her marriage; nor is there any inconsistency between the two relations, i. e., of guardianship of estate, and of marriage. The rule laid down in some jurisdiction that the marriage of a female ward does terminate the guardianship over her estate, is probably based upon the fact that in those jurisdictions the husband possesses common law rights and privileges over his wife's property. Woerner, in making the

statement above quoted, adds: "And at common law the guardianship of a female ward is terminated, in respect of her estate also, by her marriage to an adult, *because the wife's property is vested in or under the control of her husband.*" *Ib.*, p. 336. And Schouler, in like manner, remarks, "But as to the estate the rule, in view of late married women's statutes, is not so clear," p. 425.

Marriage of a female ward under guardianship as a spendthrift does not of itself operate as a termination of the relationship of guardian and ward, nor operate as a legal discharge of the guardian, but as the statute provides, it must be made to appear by proper application to the judge of probate, that such "guardianship is no longer necessary."

The ward also in support of her petition urged that no ground now exists for such guardianship and that she is not a spendthrift, and that she as well as her husband is perfectly competent to manage and control her own property, and further that at the time of the appointment of a guardian over her and her estate as a spendthrift no ground then existed and no evidence was then produced to give the probate judge jurisdiction. As before stated a full hearing was had, the spendthrift Kalua was present and was also represented by counsel, and the circuit judge in probate had full jurisdiction; evidence was then taken but the reported evidence is meagre. The adjudication of Kalua as a spendthrift was by a court of competent jurisdiction after hearing, and it is not now open to the petitioner to have a reopening and review of the proceedings and evidence had on the petition for the guardianship.

Kalua having been adjudged a spendthrift and guardianship ordered, the question arises whether she has ceased to be a spendthrift, and is the evidence now produced such as to warrant a circuit judge in probate in declaring "that such guardianship is no longer necessary." As to this the probate judge says:

"It is not for me to review the evidence upon which the court based its original order or to pass upon its sufficiency or otherwise. I must and do assume that the court was satisfied upon the

evidence before it that Kalua Kapukini was at that time a spend-
thrift within the meaning of the law, and that she was in fact
such spendthrift. The presumption is that the necessity for the
guardianship continues until the contrary is shown, and the bur-
den of proving that there is no reason now for its continuation
is on the ward. The evidence adduced at this hearing does not
satisfy me that the guardianship is no longer necessary. On the
contrary, it shows that the ward is addicted to excessive drinking
and gaming; as I believe, the sole reason that she has not by
reason of such drinking and gaming, so spent, wasted or lessened
her estate as to expose herself to want and suffering, is that she
and her property have been under the control of a guardian. I
believe, further, that if this petition were now granted, and she
given full control of her property, she would in a short period
of time wholly spend and waste her estate in consequence of her
excessive drinking and gaming. This, in my opinion, is a mate-
rial consideration,—it was for the protection of just such persons
that the statute was enacted..

"So far as the removal of Mr. Magoon as guardian is concern-
ed, no cause has been shown therefor. I find from the evidence
and counsel for the ward in his concluding argument admitted
it to be true, that Mr. Magoon's management of the ward's estate
has been prudent and careful, and that he has kept the expendi-
tures of the ward and of the maintenance of the property well
within the income.

"The petition to terminate the guardianship over the ward's
property, and to remove the present guardian is denied."

We agree with the conclusions arrived at by the circuit judge
in probate. It is true that Kalua, the ward, has not had as large
an annual allowance as the income of the estate warrants, but
an application to the circuit judge would probably result in her
receiving a much larger allowance for her support and main-
tenance than she has heretofore received. The guardian has in-
creased the estate by investing a part of the income as it ac-
cumulated and thus turned it into principal; but how far this
application of income to increase the principal should be carried

by a guardian in any particular estate, is a question that lies largely within the control and supervision of the probate judge, who can direct and order a larger or less allowance to be made to the ward according to her needs and wishes even and the condition of the estate.

The appeal is dismissed.

*Humphreys & Gear* for petitioner.

*Magoon & Silliman* for the guardian, respondent.