## *Ex parte* FRANK PAHIA.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED AUGUST 14, 1901.     DECIDED AUGUST 26, 1901.

### FREAR, C.J., GALBRAITH AND PERRY, JJ.

An appeal lies to the Supreme Court of this Territory from the order
of a Circuit Judge, in Chambers, dismissing a writ of *habeas corpus*
and remanding the petitioner into custody.

A commitment for an alleged contempt which consists in the dis-
obedience of an order made without jurisdiction, is void. Relief
from restraint under such void commitment may be had on *habeas
corpus*.

The marriage of a female ward under guardianship as a minor,
terminates the guardianship.

A Circuit Judge in Chambers, sitting in probate, at the hearing of a
guardian's petition for approval of accounts and discharge, to which
proceeding A., a third person, is not a party, has no jurisdiction to
order A. to reconvey to the ward land conveyed to him by her
after her marriage or to commit A. for contempt for disobedience
of said order.

### OPINION OF THE COURT BY PERRY, J.

#### (Galbraith, J., dissenting.)

The petitioner herein applied to the Chief Justice of this
Court in Chambers for a writ of *habeas corpus* to obtain relief
from alleged illegal imprisonment. Upon such application, the
writ was issued, returnable before a Judge of the Circuit Court
of the First Judicial Circuit, in Chambers. After hearing, said
Judge made an order dismissing the writ and remanding the
petitioner into custody. From that order the case comes to
this Court on appeal.

Two questions are presented for determination, the first of which is whether or not, under the law in this Territory, any appeal lies to this Court from an order of a Circuit Judge in Chambers dismissing a writ of *habeas corpus* and remanding the prisoner into custody. In the case entitled *In re Ah Oi*, just decided by this Court, 13 Haw. 534, in which case the petitioner had been ordered discharged from custody by the Judge whose decision was appealed from, we held that under our statutes an appeal does lie in such proceedings. In our opinion, it is equally clear that an appeal lies in the case at bar. Our statutes conferring the right of appeal contain no provision limiting such right to either the petitioner or the respondent.

(2) Is the restraint illegal? The undisputed facts, briefly, are these: In April, 1897, one J. H. Kamio was duly appointed guardian of Puhipaka Malama (w), a minor. On June 21, 1901, Kamio filed before a Judge of the Circuit Court of the First Circuit sitting in Probate, a petition, wherein he alleged that the ward had married at the time named, and prayed for an examination and approval of his final accounts therewith presented and for a discharge from all further liability as guardian. During the hearing had on that petition, evidence was adduced tending to show that F. Pahia, the present applicant, had on February 11, 1901, taken a deed from Puhipaka Malama of a certain parcel of land owned by her and situate in Koolaupoko, Oahu. Thereupon counsel for Kamio orally moved that the court order the appearance of Pahia at a time named and in reply the court ordered a subpoena to issue commanding Pahia to appear on the date suggested. In pursuance, apparently, of this order, a subpoena was issued and served, entitled, "In the Circuit Court of the First Circuit, Territory of Hawaii, At Chambers, In Probate," reading, after the formal parts, as follows: "You are commanded to subpoena Frank Pahia and the said Frank Pahia is hereby ordered and commanded to bring with him and produce to His Honor Geo. D. Gear sitting in Chambers and exercising jurisdiction in Probate a certain deed of the Real Estate of Puhipaka Malama, a ward under guardian-

ship by a Decree of a Judge of the Circuit Court whereby the said Puhipaka Malama and her husband conveyed the said land to you the said Frank Pahia and you the said Frank Pahia are ordered and commanded to appear at the Court House in Honolulu, Island of Oahu, before the Hon. Geo. D. Gear on Saturday the 20th day of July, 1901, at nine o'clock a. m. to testify as witness in the above entitled matter," and containing, further, the following additional clause: "and to show cause why you should not be adjudged guilty of contempt in purchasing the said property of the said ward."

Pahia appeared in compliance with the subpoena, took the stand, was sworn as a witness and was examined by counsel for Kamio and by the court concerning the conveyance of the land by Puhipaka to himself and, at the request of said counsel, produced the deed which was then filed by counsel as an exhibit in the guardianship case. The consideration for the deed, as appeared from that instrument and from the evidence thus given by Pahia, was four hundred dollars cash and the assumption of a mortgage on the land for eighty dollars. The examination having been concluded, the following proceedings were had:

"By the Court. 'Mr. Pahia, there is now in court the sum of four hundred dollars, which is here to be paid to you on receipt of a deed. The Court orders you to execute a deed forthwith of this property. What do you say about it? Do you refuse to do it?'

"(Mr. Pahia here signified his desire to have an interpreter which was done.)

"By the Court. 'Tell Mr. Pahia the Court now has, paid into Court, the sum of four hundred dollars, received from Mr. Pahia for the same of or from the sale of property of Puhipaka Malama while she was under guardianship. That four hundred dollars is in Court, and is here awaiting a deed from Mr. Pahia of the land which was conveyed to him. The Court orders him, having taken a conveyance of this property, and knowing Puhipaka Malama was under guardianship at the time, and the guardianship over her yet continuing, that being so the Court orders him to forthwith execute a deed of the property back to Puhipaka Malama.'

37

"By the Interpreter. 'I have told him that.'

"By the Court. 'A good and sufficient deed vesting in her whatever title she had at the time he received the deed from her. Ask him what he will do in the matter? Ask him if he will refuse to do it?'

"By the Interpreter. 'He desires to say this: When he came up here he came with the view that he was a witness in the case and not with the idea that his deed was to be cancelled, and had he known this deed was to be cancelled he would have prepared himself to bring witnesses to that effect. Therefore, he asks the indulgence of the Court to give him two weeks to consider.'

"By the Court. 'Tell him the Court will not. He was ordered up here under an order of the Court, asking why he should not be punished for contempt of Court, and ordering him to show cause this morning why he should not be punished for contempt of Court in having taken a deed of this property from the ward, knowing she was under guardianship. Ask him what he has to say as to why he should not be punished for contempt of Court.'

"By the Interpreter. 'He further states he is quite prepared to bring witnesses to show to this Court that this deed made to him was a perfect and good deed.'

"By the Court. 'Does he refuse to execute a deed?'

"By the Interpreter. 'He thinks he ought to refuse because he was perfectly ignorant when he came here of the purpose.' "

The Court thereupon declared Pahia guilty of contempt in refusing to obey the order to reconvey and sentenced him to be imprisoned until he should comply with said order; and a mittimus was accordingly issued, by order of the Circuit Judge, sitting in Probate, in Chambers.

It is clear that if the order to reconvey is void for lack of jurisdiction on the part of the Court making it, the sentence based on such void order is itself void also and relief from such sentence, if of imprisonment, may be obtained on *habcas corpus.* Disobedience of such an order is not a contempt, for the matter in such event, stands as though no order had been made. See Church on *Habeas Corpus*, 2nd Ed., p. 461; 15 A. & E. Encycl. Law, 2nd Ed., 178; *Ex parte Fiske*, 113 U. S. 726;

*Ex parte Rowland*, 104 U. S. 604, 612; *In re Sawyer*, 124 U. S. 201, 221, 222; *Ex parte Brown*, 97 Cal. 83, 85; and *Ex parte Grace*, 12 Ia. 208, 215. It is equally clear that the court of which relief is asked may, on *habeas corpus*, inquire into the jurisdiction of the court by which the commitment for contempt was made, in respect either to the subject matter or to the person, even if such inquiry involves an examination of facts outside of, but not inconsistent with, the record. See *In re Mayfield*, 141 U. S. 107, 116; *In re Cuddy*, 131 U. S. 280; *R. R. v. Weir*, 135 Mo. 230, 265; and 15 A. & E. Encycl. Law, 2nd Ed., 203.

Was the order to reconvey void? The theory upon which it is sought to be supported is that the land described in the deed was *in custodia legis* at the time of the conveyance and that it was a contempt, punishable summarily, to accept, without leave of court and with knowledge of the guardianship, a deed thereof from the ward while still under guardianship and thus, as it were, to take the property out of the custody of the court. This contention cannot be upheld. Whether or not it is a contempt for one to accept a deed of land from a minor while still under guardianship, we need not say. In the case at bar, the guardianship had, by operation of law, terminated prior (almost a year) to the date of the deed. Section 1975 of the Civil Laws, a portion of the chapter on "Guardians and Wards," provides: "The marriage of any female who is under guardianship as a minor, shall operate as a legal discharge to her guardian; and the guardian of any insane person, or spendthrift, may be discharged by any Judge of Probate, when it shall appear to him, on the application of the ward or otherwise, that such guardianship is no longer necessary." The language of the first sentence is too clear to admit of doubt; it applies in the case at bar. Puhipaka was under guardianship *as a minor*. Her marriage, in March, 1900, operated, by force of the statute, as a legal discharge to her guardian, and thereafter the court of probate retained jurisdiction over him merely for the purpose of compelling an account and of settling his administration as guardian.

See *Overton v. Beavers*, 19 Ala. 625, cited with approval in *People v. Seelye*, 146 Ill. 212. The ward's real estate, if it was before her marriage, certainly was not thereafter *in custodia legis*.

The views here expressed concerning the first provision of Section 1975 of the Civil Laws are not inconsistent, as claimed, with the decision in the matter of The Guardianship of Kalua Kapukini, 12 Haw. 22. The ward in that case was under guardianship *as a spendthrift* and not as a minor, and the conclusion there announced that her marriage did not terminate the guardianship of her estate was clearly based upon that very distinction. The Court said, "This section" (1975) "confines its declaration that the marriage of the ward shall operate as a legal discharge to her guardian to cases where the ward is under guardianship *as a minor*" (italics in original); and then added, giving its reasons for this conclusion, "At the same time the marriage of a female ward, even though the reason of the guardianship was that she was a spendthrift, of necessity terminates the guardianship so far as her person is concerned," i. e., even in the absence of a specific statutory provision to that effect. As appears above, the guardian *of a spendthrift*, under the same section, "may be discharged by any judge of probate, when it shall appear to him that said guardianship is no longer necessary." The Court simply held that there was nothing in the marriage relation or in the law in this jurisdiction governing the property of married women which would of necessity, as in the case of her person, terminate the guardianship of her estate.

At the hearing of Kamio's petition and accounts the evidence was conflicting as to whether or not Puhipaka had reached the age of legal majority prior to the date of the deed. On this last mentioned question, and on the further questions of (a) whether, if the deed was executed during the minority of the grantor, it was valid, void or voidable, and (b) whether by reason of fraud or other attendant circumstances the deed was invalid, Pahia was entitled to be heard and to have his day in

court. He was not heard and when he asked for an opportunity to present his defense the request was refused. He was not a party to the proceedings then before the court. There were no appropriate pleadings, summons or other process which could give the court jurisdiction over his person. The mere insertion in the subpoena of the above recited order to show cause why he should not be adjudged guilty of contempt in purchasing the property was insufficient for that purpose. The judgment and sentence, moreover, were not for the alleged contempt in purchasing the property, but for disobeying the order to reconvey. Nor can Pahia be held to have waived any of these irregularities or to have submitted to the jurisdiction by coming into court, producing the deed, and undergoing an examination on the stand. He did so simply as a witness in answer to the subpoena and he could not safely have refused to do so. Moreover, his statement to the court, made at the time and hereinabove quoted, clearly shows an intention not to waive any of his rights in the matter.

Further, the court did not have jurisdiction of the subject matter. The issue as to the alleged invalidity of the deed was one to be contested by and between the grantor and the grantee in proper proceedings in a court of equity and not in the guardianship proceeding in the court of probate. Title to land was involved and that question could not be determined as was attempted.

That proceedings to punish a party for contempt of court are not the appropriate proceedings for the trial of an issue of title, see *Larrabee v. Selby*, 52 Cal. 506. "The issue as to such title should be tried in an appropriate action, in which the verdict of a jury or the findings of the court may be had upon issues properly framed for the purpose of definitely determining the question of title."—*Ex parte Hollis*, 59 Cal. 405, 413. See, also, on this general subject, *White v. Gates*, 42 O. St. 109, 112; *Forrest v. Price*, 52 N. J. Eq. 16, 23, 24; and *Hartman v. Olvera*, 51 Cal. 502.

In our opinion, the order to reconvey and, therefore, the commitment for disobedience of such mandate are void for lack of jurisdiction. The appeal is sustained, the order appealed from reversed and the petitioner discharged.

*Robertson & Wilder* for petitioner.

*G. A. Davis* for respondent.

### DISSENTING OPINION OF GALBRAITH, J.

I respectfully and earnestly dissent from the doctrine announced in the foregoing opinion of the majority of the Court.