## IN THE MATTER OF THE GUARDIANSHIP OF REBECCA PANEE HUMEKU, a Spendthrift.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JULY 28, 1902.        DECIDED OCTOBER 16, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

After an adjudication by a court of competent jurisdiction that a person is a spendthrift within the meaning of the law and the appointment of a guardian, the presumption is that the necessity for the guardianship continues until the contrary is shown.

Upon the evidence in the present case, held, that this presumption has not been rebutted.

### OPINION OF THE COURT BY PERRY, J.

On April 14, 1893, Rebecca Panee Humeku was adjudged a spendthrift by a Circuit Judge sitting in Probate and J. A. Magoon was appointed guardian of her person and estate. Mr. Magoon has ever since that date acted as such guardian. On September 3, 1901, the ward filed an application for a termination of the guardianship and discharge of the guardian, the main averments being that she was not, at the time of the adjudication just referred to, and has never been a drunkard either within the meaning of Section 1965 of the Civil Laws, under which the Probate Court acted, or at all, and that she "is now and ever has been sober and sensible and competent to manage her own estate and expend prudently the income thereof and that she needs no guardian of her property or her person." The application, in other words, seems to be based upon two grounds, (a) that the adjudication should not have been made and (b) that the guardianship, even if originally necessary, is no longer necessary. The application does not, however, pray for an or-

der setting aside the original adjudication unless such prayer is to be regarded as included in that for general relief. After hearing, the Circuit Judge granted a decree terminating the guardianship. From that decree the present appeal is brought by the guardian.

If the ward intended by her application to ask for an order setting aside the original adjudication, such prayer, made eight years after the order attacked, comes, at least, with but little force. The objections urged by counsel to the order of April, 1893, are, we think, not well founded. It was competent for the ward, who was of age and not insane, to waive, as she did, service of summons and the fourteen days notice provided for by Section 1966 of the Civil Laws, to join in the petition for the appointment of Magoon, and to consent to an immediate hearing. The Probate Court had jurisdiction. The petition was not verified or filed after the hearing, as claimed by counsel. As we read the record, such verification and filing took place on the thirteenth, while the hearing was had and adjudication made on the fourteenth, of April, 1893. The averment that Rebecca "through excessive drinking and idleness is spending, wasting and lessening her estate so that she will thereby expose herself to want and destitution and suffering", follows the language of Section 1965 and is a sufficient statement of the "facts and circumstances of the case" within the meaning of that section, and, if found to be true, sufficient to authorize an order of guardianship.

Counsel also claims that the evidence adduced at the original hearing was insufficient to support the adjudication made. Upon the practical consent to and joinder in the petition endorsed thereon by Mrs. Humeku, the Probate Court might, perhaps, without other evidence, have properly made the order. However that may be, we need only add, in the language used in the case entitled *"In re Guardianship of Kalua Kapukini, a Spendthrift,"* 12 Haw. 22, 25: "A full hearing was had, the spendthrift * * * was present, * * * and the Circuit Judge in probate had full jurisdiction; evidence was then

taken but the reported evidence was meagre. The adjudication * * * as a spendthrift was by a court of competent jurisdiction after hearing, and it is not now open to the petitioner to have a re-opening and review of the proceedings and evidence had on the petition for the guardianship."

The contention that the petitioner was not a spendthrift at the date of the former decree, is not, it may be added, now available to the ward. It was abandoned by her at the hearing below. During a discussion, before the Circuit Judge, as to the admissibility of certain evidence offered by the guardian on the subject of whether or not the ward was in fact a spendthrift within the meaning of the law in April, 1893, her counsel said: "I think upon reflection I will take the responsibility of limiting my application to the proposition, I will take two years for safety, that she has been sober and sensible and competent to administer her own affairs. Counsel for petitioner admits that this application for discharge of the guardian and termination of the spendthrift trust is upon the fact that for two years last past the petitioner has not been a drunkard or a debauchee and has been and is competent to administer her own estate, to take charge of her own estate and any necessity which might have existed for the creation of this spendthrift trust originally has for two years last past ceased to exist and the continuance of the trust is no longer necessary." That admission or abandonment of position was relied upon and acted upon by the guardian in the conduct of his portion of the case at the trial and cannot now be withdrawn or disregarded by the ward.

Section 1975 of the Civil Laws provides that "the guardian of any * * * spendthrift may be discharged by any Judge of Probate, when it shall appear to him, on the application of the ward or otherwise, that such guardianship is no longer necessary." The applicant claims that under this provision she is now entitled to a termination of the guardianship.

The present petitioner having been adjudged, in 1893, a spendthrift within the meaning of the law, "the presumption is," as held by this Court in the case of *Kalua Kapukini, supra,*

"that the necessity for the guardianship continues until the contrary is shown, and the burden of proving that there is no reason now for its continuation is on the ward." The ward in this case has not shown that the guardianship is no longer necessary. On the contrary, the evidence before us clearly shows that she had not prior to the filing of this application reformed as to her habits of drinking and that she was until then addicted to the excessive use of intoxicating liquors. It appears that in 1898 she underwent a certain treatment, known as the Hagey Gold Cure, intended to cause the desire for alcoholic liquors to cease, and that for a period of about one year she abstained from the use of such liquors. Thereafter, however, as clearly shown by the evidence, she relapsed into her former habits and drank excessively. Upon the evidence, we are satisfied, further, that by reason of excessive drinking the applicant would, if the guardianship were terminated, so spend, waste and lessen her estate as to expose herself to want and suffering. The continuance of the guardianship is necessary.

After the rendition of the decree appealed from, the ward signed an instrument purporting to be a conveyance and assignment of the greater portion of her property to a domestic corporation in trust to pay to her the net income for life and at her death to convey and assign the property to such person or persons as the grantor may designate by will, or, if she shall die intestate, to certain named persons. Whether or not the execution of this instrument could under the circumstances operate as a valid conveyance or assignment as intended, we need not now decide. Let it be assumed that it does so operate. For the ward it is contended that this disposition of her property in itself shows that the guardianship is no longer necessary, within the meaning of the statute, because the ward has thereby fully protected herself from want for the remainder of her life and placed the property beyond the power of herself or any one else to squander. We cannot so hold. If, as contended by the guardian, the deed and the trust thereby created are revocable at the will of the grantor, the ward, of course, is not in any

sense protected from her own improvidence. If, on the other hand, the deed and the trust are, as claimed for the ward, irrevocable, still no protection is afforded. The principal of the property, under this view, has already been given away by the ward beyond recall, and nothing remains to her but the income; and if the guardianship is terminated and the ward left free to act as she pleases, there would be no reason in law to prevent her from absolutely selling the income also, in whole or in part, or, what is the same thing, her right to receive it.

If the condition of the ward's property and the income thereof are such as to warrant or require as a matter of justice the allowance to her or for her use of a larger sum at stated periods than she has hitherto received from the guardian, or if the guardian has been in any way remiss in the performance of his duty, those are matters which may be adjusted or remedied by the Circuit Judge in Probate upon proper application.

The decree appealed from is reversed and the cause remanded to the Circuit Judge for the entry of a decree denying the present application and for such further proceedings as may be proper.

*Thomas Fitch* for the ward.

*J. A. Magoon*, guardian, in person.

### CONCURRING OPINION OF GALBRAITH, J.

While I do not view this statute authorizing the appointment of a guardian for a spendthrift, with any degree of pride, I am not prepared to state that it does not answer a necessity and perform a useful purpose in this Territory.

A number of inferences may be made from the record in this case among which may be enumerated the following, to wit, (1) that the ward is a person without business capacity or a proper sense of the value of money or property; (2) that she has a well developed taste for strong drink and a disposition to gratify it on slight provocation; (3) that she is a spendthrift within the terms of the statute; (4) that there are a number of persons who are willing to assist her in the management and dissipation

of her estate; (5) that the estate has been prudently managed by the guardian and no satisfactory reason given for the termination of the guardianship; (6) that the interest of the ward and her estate demand that the guardianship should continue under the protection of the probate court; (7) that while the. ward has not been provided with a house in keeping with the value of her estate this necessity can be as well met under the guardianship as by its termination. For these reasons I concur in the conclusion and judgment announced in the foregoing opinion.